Barry S. Pollack (BP 4039)
Mary Cecilia Sweeney (MS 6047)
SULLIVAN & WORCESTER LLP
1290 Avenue of the Americas
New York, New York 10104
(212) 660-3000

Attorneys for Plaintiffs

**UNITED STATES DISTRICT COURT FOR**
**THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| MICHAEL D. LOCKWOOD and ALGONQUIN CAPITAL MANAGEMENT, LLC, a Connecticut Limited Liability Company,<br><br>　　　　　　　　Plaintiffs,<br><br>vs.<br><br>JOSEPH MACEDA,<br><br>　　　　　　　　Defendant. | Case No. 07-cv-7524 (HB) |

**CERTIFICATION BY MICHAEL LOCKWOOD**

I, Michael Lockwood, hereby certify as follows:

1. I am the managing member of Algonquin Capital Management, LLC, and make this Certification out of personal knowledge unless indicated otherwise.

2. In 2001, Defendant Joseph Maceda induced Jack Doyle and me to loan more than $3,500,000.00 dollars to the Defendant's company, the Ocean Power Corporation ("Ocean Power"). At the time, Defendant Maceda served as President of Ocean Power and a member of Ocean Power's Board of Directors.

3. Defendant Maceda executed several Promissory Notes and two Guarantees, in exchange for loans totaling $3.5 million to Ocean Power. On or about March 5, 2001, Defendant Maceda executed a $2.5 million Promissory Note in favor of me, on behalf of Ocean Power Cor-

1

poration ("the 2.5M Note"). In connection therewith, Defendant Maceda, in his individual capacity, also executed a Guaranty (the "2.5M Guaranty") in favor of me (the "2.5M Note & Guaranty"), in which he personally and unconditionally guaranteed the $2.5 million loan to Ocean Power. On the same day, Defendant Maceda executed a $500,000 Promissory Note on behalf of Ocean Power and (in his individual capacity) a related unconditional personal Guaranty (together the "500K Note & Guaranty"), in favor of Jack Doyle. Attached hereto as Exhibits A and B are respectively, the 2.5M Note & Guaranty and the 500K Note & Guaranty.

4. On September 19, 2001, on behalf of Ocean Power, Defendant Maceda executed a separate $500,000 note, in favor of me, that did not contain a personal guarantee (the "Non-Guaranteed 500K Note").

5. The Non-Guaranteed Note, the 2.5M Note & Guaranty and the 500K Note & Guaranty are freely assignable and provide for a standard interest rate of 10.5% and a default rate of 13.5%. Ultimately, Jack Doyle and I agreed to assign these instruments and the underlying rights to Algonquin.

6. The deadlines for repayment of the loans were extended at the request of Defendant Maceda and his company, but repayment never occurred as promised. As of September 30, 2002, despite the agreed-upon extensions of the original payment deadlines, Ocean Power had not made a single payment of outstanding principal or accrued interest on any of the loans. Moreover, Ocean Power indicated that no payment would be forthcoming.

7. Thereafter, Ocean Power was served with notice of its default. Defendant Maceda was thereby placed on notice of the default.

8. On or about December 1, 2002, Ocean Power filed for bankruptcy. Under the pertinent instruments, the collective debt of Ocean Power to Algonquin was in the principal amount

of at least $3.5 million, of which Defendant Maceda had personally and unconditionally guaranteed $3 million dollars.

9. On or about December 2, 2002, Ocean Power filed a motion to sell its assets. Under the pertinent agreement, Algonquin participated in the purchase of substantially all of Ocean Power's assets for $2 million dollars. Algonquin paid the $2 million consideration in the form of a *partial* waiver and/or assignment of its right, title, interest and/or claims in, to and under a *portion* of certain notes. Pursuant to Section 2.2. of the Sale Agreement and by Order of the United States Bankruptcy Court dated August 6, 2007 (the "Order"), the partial credit was to be applied to outstanding promissory notes issued by Ocean Power "[a]t the option of the Purchaser," Algonquin. Consistent with the Order, Algonquin applied the credit first to principal and interest under other loans not at issue in this action and then to all outstanding principal and interest under the Non-Guaranteed 500K Note, with the remainder allocated to interest payments due and owing under (and, if and to the extent applicable, the principal balance of) the 2.5M Note & Guaranty.

10. After subtracting repayment of the other loans, the Non-Guaranteed 500k Note and related interest, and certain interest on the 2.5M Note & Guaranty, at least $1,658,822.55 remains due and owing to Algonquin in this action, plus attorneys' fees and costs. Also, more than an additional $500,000 remains due and owing on the 500K Note & Guaranty in the 7522 Action.

The foregoing is true and correct to the best of my knowledge, subject to the pains and penalties of perjury.

*Michael Lockwood*
Michael Lockwood

3