UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF NEW YORK

MICHAEL D. LOCKWOOD and ALGONQUIN
CAPITAL MANAGEMENT, LLC, a
Connecticut Limited Liability Company,

                         Plaintiffs,

      vs.

JOSEPH MACEDA,

                      Defendant.

Case No. 07-cv-7524 (HB)


# MEMORANDUM OF LAW IN SUPPORT OF
# ALGONQUIN CAPITAL MANAGEMENT, LLC'S
# MOTION FOR SUMMARY JUDGMENT


Barry S. Pollack (BP 4039)
Mary Cecilia Sweeney (MS 6047)
SULLIVAN & WORCESTER LLP
1290 Avenue of the Americas
New York, New York 10104
(212) 660-3000

*Attorneys for Plaintiffs*

Algonquin Capital Management, LLC, by its undersigned counsel, hereby moves for summary judgment in this collection action on a guaranty, stating as follows:

## SUMMARY OF ARGUMENT

This collection action arises from Defendant Joseph Maceda's commitment to certain unconditional guarantees and his failure to fulfill his obligations. The facts are straightforward. The unambiguous terms of Defendant Maceda's guaranty provide that the underlying promissor's failure to repay obligations to Algonquin Capital Management, LLC, under a certain promissory note, requires Defendant Maceda to pay all outstanding principal, plus interest, attorneys' fees and costs of collection. Bare allegations by Maceda create no genuine issue of law or fact to alter this result or to warrant a jury trial.

## BACKGROUND

### Statement of Facts

For its Statement of Facts, this memorandum incorporates by reference, as if fully set forth herein, the Statement Of Undisputed Facts In Support Of Motion by Algonquin Capital Management, LLC for Summary Judgment, as well as the Certification of Michael Lockwood and accompanying exhibits, filed contemporaneously herewith.

Loans, Interest and Assignments

Defendant Maceda induced Algonquin Capital Management, LLC ("Algonquin"), and its predecessors-in-interest, Michael Lockwood, Hibernia Capital Management LLC ("Hibernia") and Jack Doyle (collectively the "Algonquin Parties") to loan more than $3,500,000 dollars (the "Ocean Power Financing") to Defendant Maceda's company, the Ocean Power Corporation ("Ocean Power"), in exchange for multiple promissory notes from Ocean Power and related unconditional personal guarantees from Defendant Maceda. At the time, Defendant Maceda served

as President of Ocean Power and a member of Ocean Power's Board of Directors.

As consideration for the Ocean Power Financing, on or about March 5, 2001, Ocean Power executed, among other promissory notes, the $2.5 million Promissory Note in favor of Lockwood (the "2.5M Note") that is at issue in this action. The 2.5M Note provides for a standard interest rate of 10.5% and a default rate of 13.5%. In connection with the 2.5M Note, Defendant Maceda executed a full and unconditional personal guaranty (the "Guaranty") in favor of Lockwood.[1] True and correct copies of the 2.5M Note and the related Guaranty (together the "2.5M Note & Guaranty") are attached hereto as Exhibit A.

By the terms of the pertinent instruments, Lockwood possessed the right to assign the 2.5M Note & Guaranty. Ultimately, he assigned these instruments and the underlying rights to Algonquin. By the express terms of those instruments, Defendant Maceda is unconditionally liable for unpaid obligations to all assigns and subsequent holders of the Note, namely, Algonquin.

Defaults by Defendant Maceda

The deadlines for repayment of the loans were extended at the request of Defendant Maceda and his company, but repayment never occurred as promised. As of September 30, 2002, despite the agreed-upon extensions of the original payment deadlines, Ocean Power had not made a single payment of outstanding principal or accrued interest under the 2.5M Note & Guaranty. Moreover, Ocean Power indicated that no payment would be forthcoming.

Thereafter, Ocean Power was served with notice of its default. When so doing, Algonquin placed Defendant Maceda on notice of its intent to exercise its remedies under the 2.5M

---

[1] On September 19, 2001, on behalf of Ocean Power, Defendant Maceda executed a separate $500,000 note, in favor of Lockwood, that did not contain a personal guarantee (the "Non-Guaranteed 500K Note").

Note & Guaranty.

Partial Credit for Bankruptcy Court Transaction

On or about December 1, 2002, Ocean Power filed for bankruptcy. Under the pertinent instruments, the collective debt of Ocean Power to the Algonquin Parties was in the principal amount of approximately $3.5 million, of which Defendant Maceda had guaranteed $3 million dollars.

On or about December 2, 2002, Ocean Power filed a motion to sell its assets. Under the pertinent agreement, Algonquin participated in the purchase of substantially all of Ocean Power's assets for $2 million dollars. The Algonquin Parties paid the $2 million consideration in the form of a *partial* waiver and/or assignment of its right, title, interest and/or claims in, to and under a *portion* of certain notes. Pursuant to Section 2.2. of the Sale Agreement and by Order of the United States Bankruptcy Court dated August 6, 2007 (the "Order"), the partial credit was to be applied to outstanding promissory notes issued by Ocean Power "[a]t the option of the Purchaser," Algonquin. A true and accurate copy of the Order is attached as Exhibit B. Consistent with the Order, Algonquin applied the credit first to other loans not at issue in this action and then to all outstanding principal and interest under the Non-Guaranteed 500K Note, with the remainder allocated to interest payments due and owing under (and, if and to the extent applicable, the principal balance of) the 2.5M Note & Guaranty.[2] After subtracting repayment of the other

---

[2]   Shortly after filing for Chapter 11 protection, the bankruptcy court authorized Ocean Power to obtain debtor-in-possession financing ("DIP") from Algonquin. In the final DIP Order, after making the requisite findings of fact and conclusions of law regarding the purpose and necessity of financing, the exigency of Ocean Power's need for capital, and Algonquin's status as a lender in good faith as that term is used in § 364(e) of the Bankruptcy Code, the Court authorized Ocean Power to borrow up to $216,819 in accordance with the terms of the parties' DIP Loan Agreement, the DIP Loan Documents and the Final Order. *See* Final DIP Order at ¶¶ 3-6).

loans, the Non-Guaranteed 500k Note, and certain interest on the 2.5M Note & Guaranty, at least $1,658,822.55 remains due and owing to Algonquin in this action.[3]

## ARGUMENT

### Standard for Summary Judgment

Rule 56 of the Federal Rules of Civil Procedure requires that summary judgment be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, to-gether with the Declarations, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 327 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The moving party carries its burden on the motion for summary judgment by "'showing' – that is, pointing out to the [trial] court – that there is an absence of evidence to support the nonmov-ing party's case." *Celotex*, 477 U.S. at 325.

In responding to the motion, the nonmoving party must "go beyond the pleadings and by [its] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, des-ignate specific facts showing that there is a genuine issue for trial." *Id.* at 324 (internal quota-tions omitted). A "metaphysical doubt as to the material facts" is not sufficient to avoid sum-mary judgment. *Matsushita*, 475 U.S. at 586 (citations omitted). A "genuine issue" only exists if the non-moving party can produce sufficient evidence upon which a reasonable trier of fact can rely to find in its favor. *Medina-Munoz v. R.J. Reynolds Tobacco Co.*, 896 F.2d 5, 8 (1st Cir. 1990). In *Anderson*, the Supreme Court explained that "if the evidence is merely colorable, or is

---

[3] At least an additional $500,000, plus interest and costs, remains due and owing in the 7522 Action.

not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50

(citations omitted).  If the non-moving party fails to adduce specific evidence, the motion for

summary judgment must be granted.  *See Celotex*, 477 U.S. at 323 ("[A] complete failure of

proof concerning an essential element of the nonmoving party's case necessarily renders all other

facts immaterial.").

As demonstrated herein, the undisputed facts in this case unequivocally demonstrate that

Algonquin is entitled to full repayment on the 2.5M Note & Guaranty by Defendant Maceda.

Judgment should enter in this action in the amount of $1,658,822.55 plus additional interest,

attorneys' fees and costs.

## I.    ALGONQUIN IS ENTITLED TO SUMMARY JUDGMENT ON THE FULL OUTSTANDING AMOUNT OF THE UNCONDITIONAL GUARANTY BY DEFENDANT MACEDA.

New York law favors the enforcement of guarantees, as a matter of law, without unneces-

sary delay.  *See Valley Nat'l Bank v. Greenwich Ins. Co.*, 254 F. Supp. 2d 448, 463 (S.D.N.Y.

2003) (in action on guaranty, granting summary judgment because the "Court is not inclined to

indulge Defendants' desire to engage in a lengthy inquiry"); *Frankel v. ICD Holdings S.A.*, 930

F. Supp. 54, 67 (S.D.N.Y. 1996) (granting summary judgment on guarantees, and rejecting Rule

56(f) request for further discovery); *Tucker Leasing Capital Corp. v. Marin Med. Mgt., Inc.*, 833

F. Supp. 948, 956-57 (E.D.N.Y. 1993) (to similar effect); *First New York Bank for Business v.

DeMarco*, 130 B.R. 650, 654 (S.D.N.Y. 1991) ("unconditional guaranties have been held to

foreclose, as a matter of law, guarantors from asserting any defenses or counterclaims"); *Banco

Portugues do Atlantico v. Asland S.A.*, 745 F. Supp. 962, 973-74 (S.D.N.Y. 1990) (rejecting

guarantor's effort to challenge allocation of principal funds, and granting summary judgment en-

forcing guarantee); *Boco Enterpr. v. Keskus-Osake-Pannki*, 204 B.R. 407, 415 (Bankr. S.D.N.Y.

1997) (under New York law, "[w]hen a guarantor has given an unconditional guaranty, its liability is clear as a matter of law").

Under New York law, to prevail in a claim on guarantees, a prima facie case consists of merely proof of (1) the note, (2) the guarantees, and (3) the failure to make payment in accordance with their terms. *See Kensington House Co. v. Oram*, 293 A.D.2d 304, 305 (N.Y. App. Div. 1st Dept. 2002); *see also Movado Group, Inc. v. Presberg*, 259 A.D.2d 371 (N.Y. App. Div. 1st Dept. 1999) (construing commitment under guaranty broadly, and reversing denial of summary judgment motion because "[p]arol evidence is inadmissible as an aid in construing a guaranty as clear and unambiguous as this one"); *Banco do Estadode Sao Paolo v. Mendes Junior Int'l Co.*, 249 A.D.2d 137, 138-39 (N.Y. App. Div. 1998) (affirming summary judgment on guaranty and severance of counterclaim).

Further, Defendant Maceda cannot create an arbitrary waiver of Algonquin's right to allocate the partial credit arising from the bankruptcy sale in the manner of its choice. See Exhibit B. Under New York law, which governs the parties' rights, an intent to waive an existing right "must be unmistakably manifested, and is not to be inferred from a doubtful or equivocal act" and "should not be lightly presumed." *Navillus Tile, Inc. v. Turner Constr. Co.*, 770 N.Y.S.2d 3 (N.Y. App. Div. 1 Dep't 2003), *citing Orange Steel Erectors v. Newburgh Steel Prods.*, 640 N.Y.S.2d 283, 285 (N.Y. App. Div. 3d Dep't 1996) *and Gilbert Frank Corp. v. Fed. Ins. Co.*, 525 N.Y.S.2d 793 (1988).

Accordingly, Defendant Maceda is liable for the full amount of the guaranty that he knowingly and voluntarily gave, subject only the partial credit as allocated by Algonquin in its sole discretion. Summary judgment should enter in this action in the amount of $1,658,822.55 plus interest, attorneys' fees and costs.

II.    **RULE 56(F) DOES NOT AUTHORIZE THE DEFENDANT TO UNDERTAKE A "FISHING EXPEDITION" IN HOPES OF DEFEATING ALGONQUIN'S CLAIMS.**

Having nothing but speculation to offer in response to Algonquin's claim – which, as a matter of law, should be liquidated and promptly paid – Defendant Maceda has suggested that discovery may uncover contrary intentions of the parties. Such a "fishing expedition," however, is a misuse of the discovery process, is not authorized by applicable rules of procedure and is impermissible.

Rule 56 of the Federal Rules of Civil Procedure authorizes the courts to deny or defer consideration of an application for summary judgment in order to permit affidavits to be obtained or discovery taken under certain circumstances not present here.[4] "Rule 56(f) discovery is specifically designed to enable a plaintiff to fill material evidentiary gaps in its case --- it does not permit a plaintiff to engage in a 'fishing expedition.'". *Paddington Partners v. Bouchard*, 34 F.3d 1132, 1138 (2d Cir. 1994), *quoting Waldron v. Cities Serv. Co.*, 361 F.2d 671, 673 (2d Cir. 1966), *judgment aff'd sub nom., First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 523, *reh'g denied*, 393 U.S. 901 (1968)). Accordingly, a party seeking discovery under Rule 56(f) must offer more than a "mere hope" of success in order to resist a motion for summary judgment. *See Gray v. Town of Darien*, 927 F.2d 69, 74 (2d Cir.) ("an 'opposing party's mere hope that further evidence may develop prior to trial is an insufficient basis upon which to justify the denial of [a summary judgment] motion'"), *cert. denied*, 502 U.S. 856 (1991), *quoting Contemporary Mission, Inc. v. United States Postal Serv.*, 648 F.2d 97, 107 (2d Cir. 1981) (affirming decision by lower court staying all discovery and granting summary judgment motion). As the Second Cir-

---

[4] Fed. R. Civ. P. 56(f) states: "Should it appear from the affidavits of a party opposing the motion that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had and make such other order as is just."

cuit Court of Appeals has observed:

> A court can reject a request for discovery, even if properly and timely made through a Rule 56(f) affidavit, if it deems the request to be based on speculation as to what potentially could be discovered. "Rule 56(f) is not a shield against all summary judgment motions. Litigants seeking relief under the rule must show that the material sought is germane to the defense, and that it is neither cumulative nor speculative," and a "'bare assertion' that the evidence supporting a plaintiff's allegation is in the hands of the defendant is insufficient to justify a denial of a motion for summary *judgment under Rule 56(f). " Sundsvallsbanken v. Fondmetal, Inc.*, 624 F. Supp. 811, 815 (S.D.N.Y. 1985) (quoting *Contemporary Mission, Inc. v. United States Postal Service*, 648 F.2d 97, 107 (2d Cir. 1981)).

*Paddington Partners*, 34 F.3d at 1138 (noting that "[s]uch divagation is decidedly not the object of the discovery procedures outlined in the Federal Rules of Civil Procedure."). *Id.*

Defendant Maceda has alluded to three potential defenses, none of which is remotely viable. First, he may claim that he signed the guarantees in his capacity as President of Ocean Power, but that position would render the entire guarantee mere surplusage or a nullity, which would violate fundamental rules of contract interpretation. Second, he may claim that he made the guarantee in favor of Ocean Power, but that would ignore express language entitling "any" subsequent holder, here Algonquin, to enforce Defendant Maceda's obligations. Finally, Defendant Maceda may claim that he is due a larger credit from the bankruptcy proceedings, but the pleadings therein are in the public record and speak for themselves. Even if Defendant Maceda were somehow to raise a viable argument about a larger credit, Algonquin would still be entitled to partial summary judgment on the issue of liability and on the indisputable amount due from him.

The Court is well within its discretion in staying or denying discovery where – as here – Defendant Maceda has failed to produce any specific facts whatsoever in support of its allegations, or where those allegations are simply insufficient as a matter of law. *See Contemporary Mission*, 648 F.2d at 107; *see also Kashfi v. Phibro-Salomon, Inc.*, 628 F. Supp. 727, 735 n.10

(S.D.N.Y. 1986) (granting summary judgment after limited discovery).

On this record, it is evident that any fishing expedition suggested by Defendant Maceda would be a misuse of the discovery process. He signed clear, unequivocal and unconditional guarantees. The underlying debtor defaulted. Consequently, any discovery would be futile and is improper as a matter of law.

## CONCLUSION

WHEREFORE, Plaintiff Algonquin respectfully requests that the Court grant summary judgment in its favor for the full amount of the guaranty, plus interest, attorneys' fees and costs. Judgment should enter in this action in the amount of $1,658,822.55 plus interest, attorneys' fees and costs.

Dated: January 29, 2008

Respectfully submitted,
MICHAEL D. LOCKWOOD AND
ALGONQUIN CAPITAL MANAGEMENT, LLC,

By its counsel,


/ s / Barry S. Pollack
Barry S. Pollack (BP4039)
Sullivan & Worcester LLP
1290 Avenue of the Americas
New York, New York 10104
(212) 660-3000

**EXHIBIT A**

May-28-02   04:20   From-ETG RIDGEFIELD                   +203 894 8484        T-860   P.002/008   F-773

# PROMISSORY NOTE AND GUARANTY
## Exhibit 1

$2,500,000.00                                          Date: 5 March, 2001

**FOR VALUE RECEIVED**, The undersigned, Ocean Power Corporation, a Delaware Corporation ("Obligor"), promises to pay to the order of Michael D. Lockwood and his successor or assigns (each an "Obligee") at 5000 Robert J. Mathews Parkway, El Dorado Hills, California 95762, the sum of Two Million Five Hundred Thousand Dollars ($2,500,000) with interest thereon from the date hereof until paid, at the rate of ten and one half percent (10.5%) per annum, in accordance with the following schedule:

| PAYMENT DATE | AMOUNT |
|---|---|
| September 5, 2001 | All Accrued but unpaid interest |
| December 5, 2001 | All accrued but unpaid interest |
| March 5, 2002 | All unpaid principal and accrued but unpaid interest |

Should interest or principal not be paid when due, all interest and principal shall thereafter bear interest at a rate of 13.5%. Principal and interest are payable in lawful money of the United States.

Ocean Power Corporation may make payments on the principal of this Note at any time without penalty, provided any such payments shall first be credited to costs, expenses, fees or penalties due, then to interest due, then to principal.

Obligor hereby covenants and agrees that until this Note is paid in full, it shall (i) incur no indebtedness that is not expressly subordinated to the prior payment in full of all payments due under this Note or (ii) grant, or suffer to exist any lien, pledge or other security interest on all or any portion of its assets.

In the event that (i) Obligor shall commence a voluntary case or proceeding for relief, or an involuntary case or proceeding shall be commenced against Obligor seeking relief with respect to Obligor's debts, under bankruptcy, insolvency or other similar law now or hereafter in effect (ii) Obligor seeks, or if any third party seeks in an involuntary proceeding, the appointment of a trustee, liquidator, receiver, custodian or other similar official for all or a substantial portion of Obligor's assets, (iii) Obligor shall consent to such relief or to the appointment of, or taking possession by, any such official in an involuntary case or other proceeding commenced against him or (iv) Obligor shall make a general assignment for the benefit of creditors, or shall fail generally to pay debts when due, then, without any action by Obligee, in each case the entire amount payable under this Note shall become immediately due and payable.

Obligor and all others who may become liable for the payment of all or any part of this obligation do hereby severally waive presentation for payment, protest and demand, notice of protest, demand and dishonor, or nonpayment of this Note, and agree that the duties and obligations of Obligors, or anyone else who may become liable hereunder, may be extended from time to time without affecting the liability of each. An Obligee may consent to any extension of time regarding the payment hereof, or the release of any party liable for this.

wlp/fle/ddraw/lockwood/promnote/lockwd

ALG000004

May-29-02    04:20    From-ETG RIDGEFIELD    +203 064 0404    T-660  P.002/006  F-773

# PROMISSORY NOTE AND GUARANTY

obligation. Any such extension or release may be made without notice to any of such parties and without discharging their liability. The holder(s) hereof shall not be deemed by any act, or omission, to have waived any of its rights or remedies hereunder unless such waiver is set forth in such writing.

None of the rights or remedies of the holder hereunder are waived or affected by failure or delay to exercise them. All remedies conferred on holder by this Note or any other instrument or agreement shall be cumulative and none are exclusive. Such remedies may be exercised concurrently or consecutively at the holder's option.

Obligor promises to pay reasonable attorney's fees and costs incurred in collection and/or enforcement of this Note or any part hereof, and in the event of any Court action, all costs and such additional sums as attorney's fees as the Court may adjudge reasonable.

This Note shall be assignable in whole or in part without the consent of Obligor provided that no such partial assignment shall be for a principal amount of less than Five Hundred Thousand Dollars ($500,000.00).

The laws of the State of New York applicable to agreements made and to be performed entirely within such state shall govern the validity, construction performance and effect of this Note. Obligor irrevocably and unconditionally submits to and accepts the exclusive jurisdiction of any United States federal court sitting in the Borough of Manhattan, City of New York for any action, suit, or proceeding arising out of or based upon this Note or any matter relating to it, and waives any objection it may have to the laying of venue in any such court or that such court is an inconvenient forum or does not have personal jurisdiction over it.

**OCEAN POWER CORPORATION**

By: _____
      Joseph P. Maceda, President

wlp/fmddocs/osbpool/promnotelookwd

ALG000005

# GUARANTY

**GUARANTY** given by Joseph P. Maceda, the undersigned, to induce the acceptance of the within note (the "Note") by the Ocean Power Corporation.

1.    *Obligation.*   In consideration of the loan made upon the Note, the undersigned hereby unconditionally guarantees to the Ocean Power Corporation, it successors, and assigns, and to every subsequent holder of the Note, irrespective of the genuineness, validity, regularity, or enforceability thereof, or of the obligation evidenced thereby, or of an collateral therefore, or of the existence, extent, or values of any such collateral, irrespective of any other circumstance, that all sums stated therein to be payable on the Note shall be promptly paid in full, in accordance with the provisions thereof, whether at maturity, by acceleration or otherwise, and in case of any extension or extensions, renewal or renewals.

2.    *Consent.*   The undersigned hereby consents that at any time, without notice to the undersigned, payment of any sums payable on the Note, or of any of the collateral therefore, may be extended, or the Note or any of such collateral may be renewed in whole or in part, or any of such collateral may be exchanged, surrendered, or otherwise dealt with as the holder of the Note may determine, or any party of the Note may be done, all without affecting the liability of the undersigned.

3.    *Waiver.*   The undersigned hereby waives presentment, demand for payment by the maker or anyone else, protest, and notice of nonpayment, dishonor, or protest of the Note, and all other notices and demands.

Dated:_____, 2001
   New York, New York

 

_____
Joseph P. Maceda, President

Dated: ___3/_____, 2001

ALG000006

**EXHIBIT B**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re | ) Chapter 11 |
| | ) |
| OCEAN POWER CORPORATION, | ) Case No. 02-15989-reg |
| | ) |
| Debtor. | ) |
| | ) |
| | ) |

**CONSENT ORDER ON MOTION BY MICHAEL D. LOCKWOOD AND
ALGONQUIN CAPITAL MANAGEMENT, LLC FOR SUMMARY JUDGMENT ON
MOTION FOR ORDER LIQUIDATING ALLOWED SECURED AND/OR
SUPERPRIORITY ADMINISTRATIVE EXPENSE CLAIM PURSUANT TO FINAL DIP
FINANCING ORDER AND DIRECTING IMMEDIATE PAYMENT THEREOF**

Upon the Motion by Algonquin Capital Management, LLC and Michael D. Lockwood, as

managing member of Algonquin and individually (collectively "Algonquin"), for Summary

Judgment on its Motion for Order Liquidating Allowed Secured and/or Superpriority

Administrative Expense Claim Pursuant to Final DIP Financing Order and Directing Immediate

Payment Thereof (the "Motion"),[1] IT IS HEREBY AGREED, CONSENTED TO, ORDERED,

ADJUDGED AND DECREED THAT –

1. Algonquin, acting for itself and as agent for John V. Doyle and Hibernia Capital

Management LLC (Doyle and Hibernia Capital Management LLC hereinafter collectively

"Hibernia"), has asserted a secured and/or superpriority administrative expense claim against the

estate in the principal amount of $216,818, plus continuing interest, attorneys' fees and expenses

(the "Superpriority Claim").

2. The Superpriority Claim is allowed as a superpriority administrative expense claim in

the amount of $380,000.00 pursuant to Section 364(c)(1) of the Bankruptcy Code, subject to

---

[1] Capitalized terms not otherwise defined herein shall have the meanings set forth in the Motion.

{B0657976; 4}NYC/339288.1

adjustment pursuant to the provisions of paragraph 4 of this Order (the "Allowed Superpriority Claim").

3. Effective upon receipt of payment in full of the Allowed Superpriority Claim, Algonquin and Hibernia expressly release the Debtor, the Committee and the estate from liability as to that portion of the Superpriority Claim that exceeds the amount of the Allowed Superpriority Claim.

4. The Allowed Superpriority Claim shall be paid from funds presently held by Arent Fox LLP, as Counsel to the Committee, by wire transfer on or before August 10, 2007, in accordance with wire transfer instructions supplied by Algonquin.[2]  All or any portion of the Allowed Superpriority Claim for which payment is not received by Algonquin on or before August 10, 2007 shall bear interest accruing at a per diem rate of .04% (i.e., 15% annual interest computed on the basis of a 360-day year) from and after August 11, 2007 through and including the date on which Algonquin receives payment in full of the Allowed Superpriority Claim, as an allowed superpriority administrative expense against the estate.

5. Algonquin has asserted an additional claim in the amount of $3,658,822.55, plus attorneys' fees and expenses, net of credit in the amount of $2.0 million in accordance with that certain Sale Agreement between and among the Debtor, as seller, and Algonquin and Hibernia, as purchasers, which was approved by the Court on or about February 7, 2003 (the "Algonquin Unsecured Claim").  Algonquin has credited the sum of $2.0 million to certain promissory notes executed by the Debtor to Algonquin on August 16, 2002, August 23, 2002, August 29, 2002, September 19, 2001, and, to the extent of any remaining credit, that certain promissory note executed by the Debtor to Algonquin on March 5, 2001.  The Algonquin Unsecured Claim is

---

[2]  Such payment is to be wired to Michael Lockwood, Chase Bank, ABA#  02100xxxx, acct # 22700026xxxx.

accordingly allowed as a general unsecured nonpriority claim in the amount of $1,658,822.55 (the "Allowed Algonquin Unsecured Claim").

6.  Hibernia has asserted an additional claim in the amount of $605,844.35, plus attorneys' fees and expenses (the "Hibernia Unsecured Claim"). The Hibernia Unsecured Claim is allowed as a general unsecured nonpriority claim in the amount of $605,844.35 (the "Allowed Hibernia Unsecured Claim").

7.  Except for the Allowed Superpriority Claim, the Allowed Algonquin Unsecured Claim and the Allowed Hibernia Unsecured Claim, Algonquin and Hibernia shall not be entitled to any further claim or distribution of any kind on account of any other claim from the Debtor, the Committee or the estate, and the proofs of claim filed by Algonquin and Hibernia in the Debtor's case shall be deemed automatically withdrawn.

8.  Algonquin and Hibernia retain all rights, claims and defenses they had or may have, at law or in equity, against third parties who are not parties to this Order with respect to the transactions and occurrences that gave rise to the Superpriority Claim, the Algonquin Unsecured Claim and the Hibernia Unsecured Claim.

Dated : *August 6, 2007*                                    *s/ Robert E. Gerber*
                                                           Hon. Robert E. Gerber
                                                           United States Bankruptcy Judge


Hereby stipulated and agreed to by:

*/s/ Pamela Smith Holleman*                       */s/ Schuyler G. Carroll*
Pamela Smith Holleman (PH-1353)                   Schuyler G. Carroll (SC-1234)
SULLIVAN & WORCESTER LLP                          ARENT FOX LLP
One Post Office Square                            1675 Broadway
Boston, MA  02109                                 New York, NY  10019

*Counsel to Algonquin and Hibernia*              *Counsel to the Committee*

*/s/ Alan D. Halperin*
Alan D. Halperin (AH-8432)
HALPERIN BATTAGLIA RAICHT, LLP
555 Madison Avenue – 9th Floor
New York, NY  10022

*Counsel to the Debtor*