Michael L. Cirrito, Esq. (9053)
WHITE, CIRRITO & NALLY, LLP
Attorneys for Defendant MACEDA
58 Hilton Avenue
Hempstead, New York 11550
(516) 292-1818

UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X

MICHAEL D. LOCKWOOD and              Civil Action Number: 07-cv-7524
ALGONQUIN CAPITAL MANAGEMENT, LLC,   (HB)
A Connecticut Limited Liability Company,

                          Plaintiff,

         -against –

JOSEPH MACEDA,

                          Defendant.
-------------------------------------------------------------X

## CERTIFICATION OF JOSEPH MACEDA

I, JOSEPH MACEDA, hereby certifies as follows:

1. I was the former President of Ocean Power Corporation (hereinafter "the company" or "OPC"), a Delaware Corporation which was in the business of developing sea-water desalination and power systems including Stirling engine-based products and technologies.

2. In 1997, I started this company with an initial loan to the company of approximately $650,000.00, (See, Exhibit "1" at page 8).

3. I also transferred to the company valuable intellectual property that I had developed in the field of thermal management which was later applied by the company to Stirling engines.

4. OPC was approached by the Plaintiff, Michael Lockwood, who was interested in investing in this developing energy field and, in January 2000, Mr. Lockwood participated in a private placement with the purchase of common stock and warrants.

5.  In March of 2001, OPC needed additional capital in order to produce, market and sell its product, and Michael Lockwood offered to loan OPC, TWO MILLION FIVE HUNDRED THOUSAND ($2,500,000.00) DOLLARS on condition that his loan be secured by the assets of OPC.

6.  Mr. Lockwood's attorneys prepared a Promissory Note, Guaranty and Security Agreement which were presented to me for signature on March 5, 2001, (See, Exhibits 2, 3 and 4).

7.  The Guaranty which is the subject of this action, was presented to me to sign in my capacity as "President" of OPC and bears the legend of President at the signature line, (See, Exhibit "3").

8.  The Guaranty also stated that the undersigned was guarantying the performance of the Note to the "Ocean Power Corporation" and not to Michael Lockwood.

9.  I am advised that on September 25, 2002, an Assignment Agreement was entered into between Michael D. Lockwood and Algonquin Capital Management, LLC, (See, Exhibit "5").

10. The Assignment Agreement, prepared and signed by the Plaintiff, further confirmed that the Guaranty was signed by me on behalf of OPC and not individually, and recites that it is assigning the "$2,500,000.00 Promissory Note and Guaranty dated March 5, 2001 executed by Ocean Power Corporation (the `Company') in favor of Lockwood," (emphasis ours).

11. At the time this Guaranty was signed, I was owed over $490,000 from OPC and had not taken a full salary since 1999, a fact known to the Plaintiff and on the books of OPC, (See, Exhibit "1" at pages 8 and 13).

12. After the tragedy of September 11, 2001, investment and development in the field completely dried-up and OPC could no longer fulfill its obligations.  Although we had

met all of our development milestones and had a good and valuable product with over $30 million dollars of pending orders, we could neither produce nor market it in the post-9/11 environment.

13. Having a secured position, and realizing the value of the patents and intellectual property held by OPC, Lockwood met with the Board of Directors and offered a Chapter 7 bankruptcy as the only way out.

14. On December 1, 2002, I resigned my position as President and member of the Board of Directors and on December 2, 2002, the petition in bankruptcy was filed.

15. I have now learned that in the bankruptcy proceeding, my address was listed simply as "Sidney Center NY 13839", although all parties had my address at 520 3rd Street, Brooklyn, New York, (See, Exhibit "1").

16. As a result, I did not receive any notice of sale regarding the ultimate sale of the assets of OPC and, thus, did not participate in this sale.

17. I have been informed that the Plaintiff was the only bidder at the sale and purchased the assets of OPC for a TWO MILLION ($2,000,000.00) DOLLAR credit against the Promissory Notes naming the company as obligee. Most of these assets consisted of valuable patents and patent applications for the technology of developing a highly efficient Stirling engine, (See, Exhibit "6").

18. It is my belief that these patents were worth well in excess of the $2,000,000.00 offered and paid by the Plaintiff. In fact, these assets were purchased by Power Play Energy, LLC in the bankruptcy proceeding, a company established by the Plaintiff to market and develop these patents, (See, Exhibit "7"). Since the bankruptcy purchase, the Plaintiff has partnered with Infinia Corporation and that company has received NINE MILLION FIVE HUNDRED THOUSAND ($9,500,000.00) DOLLARS in new venture funding to develop this

Stirling engine based upon the patents acquired by the Plaintiff in the bankruptcy sale, (See, Exhibit "8").

19. In fact, OPC was offered THREE MILLION ($3,000,000.00) DOLLARS in financing for a Chapter 11 re-organization by the investment bank, Kuhns Brothers, by letter dated November 19, 2002, (See, Exhibit "9"). This offer was presented to Lockwood who refused to permit, as a secured creditor, anything other than a Chapter 7 bankruptcy, (See, Exhibit "10"). I offered, at that time, to turn in all of my company stock and the reorganization proposed by Kuhns Brothers would have, most likely, paid all the creditors of OPC. Rather than accept this offer, Lockwood insisted on a liquidation - - it being his intent to acquire the company's valuable assets.

20. It is also my understanding that the Plaintiff used the $2,000,000.00 credit to take credits on the OPC Notes not purportedly guaranteed before taking any credit on the Note which is the subject of this proceeding.

21. It is my application that this action be dismissed in that I have no personal liability based upon the documents submitted by the Plaintiff in that:

    a. the Guaranty was signed by me in my corporate capacity as President of OPC and not personally; and

    b. the Guaranty was to OPC and not to the Plaintiff.

22. In the event that the Court should find that the Guaranty, despite its defects, is a valid personal Guaranty by me, I, alternatively request that this case be dismissed in that the Plaintiff voluntarily impaired the collateral secured by this Note by payment (credits) to other unguaranteed notes in detriment to the Guarantor and, thus, extinguished the Guaranty pursuant to Section 3-606 of the New York Uniform Commercial Code ("UCC").

23. Finally, if the Court were to find me liable on this Guaranty, since no Notice of Sale was provided to me as a purported Guarantor of a collateralized Note, the sale was

improper and in violation of Article 9 UCC.  Therefore, the $2,000,000.00 credited by Plaintiff is not binding upon the Guarantor and I am entitled to a full credit for the fair market value of the valuable intellectual property transferred to Plaintiff in the Bankruptcy proceeding.  Since this alternate request deals with the issue of damages, discovery and a trail would have to be had on this issue.

The foregoing is true and correct to the best of my knowledge and subject to the penalties of perjury.

Dated: February     , 2008

JOSEPH MACEDA

## EXHIBIT LIST- NOTICE OF MOTION FOR SUMMARY JUDGMENT

1. Creditor's List

2. Promissory Note

3. Guaranty

4. Security Agreement

5. Assignment Agreement

6. Patent List

7. Bill of Sale

8. Infinia Corporation information

9. Kuhns Brothers letter to OPC

10. Kuhns Brothers letter to Lockwood

**EXHIBIT "1"**

Ocean Power Corporation
Creditor List as of 11/1/02

| Creditor List | Type | Account Number | Date Claim Was Incurred and Consideration For Claim | Amount of Claim |
|---|---|---|---|---|
| ABN AMRO Incorporated<br>55 East 52nd Street<br>New York, NY 10055 | T | | 9/24/01<br>Investment Banking Services | 20,000.00 |
| Abraham-Aaron<br>P.O.Box 12002<br>Pleasanton, CA 94588 | T | | 10/16/01<br>Human Resources Outsource | 1,200.00 |
| ADT Security Services<br>P.O.Box 96175<br>Las Vegas, NV 89193 | T | 010-152-00013235 | Starting 7/20/01<br>Security Installation and Monitoring | 10,655.60 |
| Aerojet<br>P.O.Box 13222<br>Sacramento, CA 95813 | T | Contract Code KK011108 | 1/16/02<br>R&D | 3,623.20 |
| Air Systems<br>3850 Happy Lane<br>Sacramento, CA 95827 | T | 109 | Starting 5/24/01<br>HVAC Service Contract | 4,442.48 |
| Airgas<br>P.O.Box19255<br>Sacramento, CA 95819 | T | AUI15 | Starting 8/31/02<br>Lab Supplier | 47.96 |
| American Corporate Counsel Association<br>P.O.Box 791044<br>Baltimore, MD 21279 | T | 50356 | 3/1/02<br>Professional Organization | 175.00 |
| Anthony Jones<br>1282 11th Avenue<br>San Francisco, CA 94122 | T | | 2002 Consulting Services | 1,275.00 |
| Arntzen de Besche AS<br>P.O.Box 2734 Solli<br>N-0204 Oslo, Norway | T | | 3/14/01<br>Legal Services | 916.50 |
| Aspen Publishers, Inc.<br>7201 McKinney Circle<br>Frederick, MD 21704 | T | 2000124363 | 11/27/01<br>Legal Books | 128.74 |
| AT&T Wireless<br>Attn: National Correspondence Team<br>P.O.Box 6028<br>Cerritos, CA 90703 | T | 202386017 | Starting 3/16/02<br>Cell Phone Service | 1,788.49 |
| AT&T Wireless<br>Attn: National Correspondence Team<br>P.O.Box 6028<br>Cerritos, CA 90703 | T | 12908661 | 9/9/2002<br>Cell Phone Service | 2,272.25 |
| AT&T<br>P.O.Box 78225<br>Phoenix, AZ 85062 | T | 0515570332001 | Starting 1/12/02<br>Conference Calling | 8,453.58 |
| AT&T<br>P.O.Box 78225<br>Phoenix, AZ 85062 | T | 0514730579001 | Starting 8/3/01<br>Conference Calling | 14,194.47 |
| AT&T<br>P.O.Box 78355<br>Phoenix, AZ 85062 | T | P085526002354 | Starting 6/14/01<br>Calling Cards | 3,495.00 |
| ATC Telecommunications Services<br>10420-C Fair Oaks Blvd<br>Fair Oaks, CA 95628 | T | | Starting 6/12/01<br>Phone installation & Service | 3,575.73 |
| b.com<br>21 West 8th Street, Suite 210<br>Holland, MI 49423 | T | | 4/27/01<br>Logo | 1,250.00 |
| Bernhard Kretten, Esq. & Associates<br>300 Capital Mall, Suite 1100<br>Sacramento, CA 95814 | T | | Starting 3/8/02<br>Patent Attorney | 2,125.00 |
| Blue Shield of California<br>Att: Kathy McPhail<br>P.O.Box 629014<br>El Dorado Hills, CA 95762 | T | | Starting July 2002<br>Health Insurance | 19,895.90 |
| Bowne Publishing Division<br>345 Hudson Street<br>New York, NY 10014 | T | 00264185/0000 | 10/10/01<br>Legal Books | 203.40 |

Ocean Power Corporation
Creditor List as of 11/1/02

| Creditor List | Type | Account Number | Date Claim Was Incurred and Consideration For Claim | Amount of Claim |
|---|---|---|---|---|
| Business Wire<br>44 Montgomery St., 39th Floor<br>San Francisco, CA 94104 | T | 1127206 | Starting10/29/01<br>Press Releases | 1,150.00 |
| Caltronics Business Systems Supplies<br>10491 Old Placerville Road, Suite 150<br>Sacramento, CA95827 | T | SOE551 | June 2001<br>Copier Supplies & Usage | 4,011.91 |
| Carl Fricke<br>76 Bridgegate Drive<br>San Rafael, CA 94901 | T | | 10/1/02<br>Consulting Services | 40,000.00 |
| CCH Incorporated<br>P.O. Box 4307<br>Carol Stream, IL 60197 | T | 164353568 | 2000 & 2001<br>Legal Books | 1,650.51 |
| CEB<br>300 Frank H. Ogawa Plaza, Suite 410<br>Oakland, CA 94612-2001 | T | 947592 | 12/4/2001<br>Legal Books | 197.18 |
| Cheng-Guan Michael Quah<br>67 Canney Road<br>Durham, NH 03824 | T | | 2001 & 2002 Expenses | 6,471.96 |
| Citicorp Vendor Finance<br>1800 Overcenter Drive<br>Moberly, MO 65270 | T | #2024371<br>#2024370<br>#2577660 | June 2000<br>Copier Equipment Leases<br>Accelerated Amount $44,260.60<br>(Caltronics) | 4,269.59 |
| ConferenceCall.com<br>1445 MacArthur Drive, Suite 226<br>Carrollton, TX 75007 | T | 054852 | Starting August 2002<br>Conference Call Service | 625.80 |
| Corporate Express Inc<br>PO Box 71052<br>Chicago, IL 60694-1052 | T | 602188 | Starting September 2000<br>Office Supplies | 1,484.50 |
| CT Corporation<br>818 West Seventh Street - Team 1<br>Los Angeles, CA 90017 | T | | Starting 2001<br>Delaware Corporate Services | 479.00 |
| Dantec Engineering, Inc.<br>605 Thornhill Road<br>Danville, CA 94526 | T | | 2001 Consulting Services | 31,128.48 |
| Darby & Darby<br>805 Third Street<br>New York, NY 10022 | T | | Starting March 2001<br>Patent Attorney | 290,375.76 |
| David Haberman<br>IF, LLC<br>P.O.Box 1922<br>Canyon Country, CA 91386 | T | | September 2001<br>Consulting Services | 30,000.00 |
| David Moard<br>1545 S. El Molino Avenue<br>Pasadena, CA 91106 | T | | 9/17/01 - 12/31/01<br>Travel Expenses | 6,992.86 |
| Dell Computers<br>P.O.Box 9020<br>Des Moines, IA 50368 | T | 006289985 | 10/15/01<br>Computer Purchase | 3,026.08 |
| Depository Trust Company<br>55 Water Street<br>New York, NY 10041 | T | PX674869001000 | 2/14/02<br>Subscription Service | 2,210.00 |
| DHL Airways, Inc.<br>PO Box 78016<br>Phoenix, AZ 85062 | T | 1360234 | 4/16/02<br>Customs Duty Invoice | 145.97 |
| DHL Airways, Inc.<br>PO Box 78016<br>Phoenix, AZ 85062 | T | 924579875 | 8/31/02<br>Shipping Charges | 43.66 |
| DoALL<br>330 Commerce Circle<br>Sacramento, CA 95815 | T | 20010027 | 8/31/01<br>R&D Materials | 9,310.20 |
| Douglas Lehrman<br>428 J Street, Suite 360<br>Sacramento, CA 95814 | T | | 2/15/01<br>Immigration Attorney | 1,949.78 |

Ocean Power Corporation
Creditor List as of 11/1/02

| Creditor List | Type | Account Number | Date Claim Was Incurred and Consideration For Claim | Amount of Claim |
|---|---|---|---|---|
| E.B. Martineau & Associates 171 East 90th Street, Suite 4C New York, NY 10028 | T | | 2001 & 2002 Consulting Services | 87,724.27 |
| Ecological Engineering & Monitoring 9320 Stargaze Ave. San Diego, CA 92129 | T | | 5/25/01 Monitoring Equipment | 5,000.00 |
| EIN Publishing 119 South Fairfax Street Alexandria, VA 22314 | T | I2229 | 2001 & 2002 Subscription | 226.91 |
| El Dorado Disposal Services P.O.Box 1270 Diamond Springs, CA 95619 | T | 300-0000821-1341-6 | Sept & Oct 2002 Waste Removal | 381.72 |
| Eric Adema 10 Christopher Street, #5E New York, NY 10014 | T | | 2001 Consulting Fees | 19,125.00 |
| Eric Adema 10 Christopher Street, #5E New York, NY 10014 | T | | 2001 & 2002 Travel Expenses | 9,036.94 |
| Erik Bylin 2250 Latham Street #2 Mountain View, CA 94040 | T | | August-October 2001 Consulting Services | 18,990.00 |
| Execustay by Marriott 7595 Rickenbacker Dr Gaithersburg, MD 20879 | T | | 2001 Temporary Housing | 2,504.93 |
| Express Tel P.O. Box 31475 Salt Lake City, UT 84131 | T | 4-17685-6 | August & September 2002 Long Distance Phone Service | 580.05 |
| FedEx P.O.Box 1140 Memphis, TN 38101 | T | 2191-7533-7 2293-7890-2 | 2002 Shipping Charges | 1,512.82 |
| Felix Chen 3205 Bishop Ct. Roseville, CA 95661 | T | | 2001 Consulting Services | 1,000.00 |
| First Union Securities, M & A 301 South College Street, 4th Floor Charlotte, NC 28288 | T | | 3/21/01 Expenses | 3,128.99 |
| Foresthill Telephone Company P.O.Box 1189 Foresthill, CA 95631 | T | | September 2002 Phone Service | 453.84 |
| GD Financial Corp 10393 San Diego Mission Rd, Suite 212 San Diego, CA 92108 | T | | 2001-2002 Insurance Premium | 3,209.93 |
| George Englemann 2420 Gunsmoke Ct. Placerville, CA 95667 | T | | 2001 Consulting Services | 1,267.50 |
| Hadwaco Hameentie 135 FIN-00560 Helsinki Finland | T | | 1/31/01 Parts | 770.00 |
| Hart & Co Flooring 7140 Horseshoe Bar Rd Loomis, CA 95650 | T | | 7/5/01 Carpet & Installation | 2,548.00 |
| HJ & Associates, LLC 50 South Main Street, Suite 1450 Salt Lake City, UT 84144 | T | | 2002 Auditor | 23,935.89 |
| HQ Global Workplaces, Inc. 230 Park Avenue, Suite 1000 New York, NY 10169 | T | | 2002 Rent | 15,670.00 |
| Innercite 4989 Golden Foothill Parkway #4 El Dorado Hills, CA 95762 | T | | 2002 Internet Connection | 645.00 |

Ocean Power Corporation
Creditor List as of 11/1/02

| Creditor List | Type | Account Number | Date Claim Was Incurred and Consideration For Claim | Amount of Claim |
|---|---|---|---|---|
| Interstate Transfer Company 6084 South 900 East, Suite 101 Salt Lake City, UT 84121 | T | | 2002 Transfer Agent | 1,366.02 |
| Jackson Ito 2507 Occidental Drive Sacramento, CA 95826 | T | | 2001 Consulting Services | 917.27 |
| Jordan Richard Associates 1846 S 1200 E/POB 522102 Salt Lake City, UT 84152 | T | | 2001 & 2002 Edgar Filing Service | 9,420.34 |
| Karl Kordesh A-8010 Stremayrgasse 16, III Graz, Austria | T | | 1997 Consulting Services | 800.00 |
| Kenneth P. Klaas 4006 Jane Court Carmichael, CA 95608 | T | | 2001 Consulting Services | 2,400.00 |
| Kevin Tyson 17 Coralyn Avenue White Plains, NY 10605 | T | | 2001 Expenses | 3,435.35 |
| Kirkpatrick & Lockhart LLP 201 South Biscayne Blvd. Miami, FL 33131 | T | | 2002 SEC Attorney | 64,662.65 |
| KRM Risk & Management4270 West Richert, Suite 101 Fresno, CA 93722 | T | | 2002 Insurance Premium | 1,511.00 |
| Magic Carpet Travel 12701 Meiss Road Sloughouse, CA 95683 | T | | 2002 Travel | 6,065.00 |
| Malta Desalination Services Pembroke RO Plant Pembroke, STJ07, Malta | T | | 2000 & 2001 Services rendered to maintain equipment in Malta | 121,343.64 |
| Melaroba Corporation 122 Yukon Drive Woodbury, NY 11791 | T | | 10/12/01 Fees & expenses re: Note | 25,000.00 |
| Mergent FIS 60 Madison Avenue, 6th floor New York, NY 10010 | T | | 2001 Moody's Listing | 2,300.00 |
| Michael Brown 5647 Waalnut Ave #46 Orangevale, CA 95662 | T | | 2001 Consulting Services | 4,935.00 |
| Micro Warehouse 7077 Collection Center Drive Chicago, IL 60693 | T | 0062365747 | 2001 supplies | 5.48 |
| Moss, Adam LLP 700 University Avenue, Suite 110 Sacramento, CA 95825 | T | | 2001 & 2002 Accountant | 73,378.06 |
| Office Depot Credit Plan Dept. 56-8402217335 P.O.Box 9020 Des Moines, IA 50368 | T | | 2001 & 2002 Office Supplies | 2,388.97 |
| Olga Johnson 9320 Stargaze Avenue San Diego, CA 92129 | T | | 5/25/01 Transiation Services | 877.00 |
| Pacific Bell Payment Center Sacramento, CA 95887 | T | 916 989 4083 971 160 N 6 | May & June 2002 Telephone service | 70.37 |
| Pacific Bell Payment Center Sacramento, CA 95887 | T | 916 933-6156 071 160 N 9 | Aug & Sept 2002 Telephone service (alarm) | 67.58 |
| Pacific Bell Payment Center Sacramento, CA 95887 | T | 916 933-8100 057 160 N 1 | Aug & Sept 2002 Telephone service (main) | 721.51 |

Ocean Power Corporation
Creditor List as of 11/1/02

| Creditor List | Type | Account Number | Date Claim Was Incurred and Consideration For Claim | Amount of Claim |
|---|---|---|---|---|
| Pacific Gas and Electric Company<br>Box 997300<br>Sacramento, CA 95899 | T | BHT 60 53725-2 | October 2002<br>Electric | 741.61 |
| Pacific Gas and Electric Company<br>Box 997300<br>Sacramento, CA 95899 | T | BHT 60 53445-1 | October 2002<br>Gas | 28.92 |
| Parc Environmental Construction<br>2706 South Railroad Ave.<br>Fresno, CA 93725 | T | Contract # 4279B | June 2002<br>Building Demolition | 4,702.00 |
| Pat Grimes<br>2411 Hill Road<br>Scotch Plains, NJ 07076 | T | | 2000<br>Consulting Services | 60,000.00 |
| Pitney Bowes<br>1313 North Atlantic, 3rd Floor<br>Spokane, WA 99201-2303 | T | 1677-2440-86-9 | 2002<br>Postage meter rental | 137.45 |
| Pitney Bowes, Inc. (Purchase Power)<br>P.O. Box 856042<br>Louisville, KY 40285-6042 | T | 1677-2440-86-9 | 2002<br>Postage | 161.52 |
| Protection Services Industries<br>10535 Foothill Blvd, Suite 350<br>Rancho Cucamonga, CA 91730 | T | 30-37826 | 2001<br>Security services | 3,437.35 |
| PTC<br>128 Technology Drive<br>Waltham, MA 02453 | T | 147949 | 2001<br>Software maintenance | 2,550.00 |
| Randall L. Peeters<br>4404 Morning Star Place<br>Foresthill, CA 95631 | T | | March & July Travel Expenses | 697.79 |
| Robert Bylin<br>4800 Golden Foothill Parkway<br>El Dorado Hills, CA 95762 | T | | Beginning August 2001<br>Rent | 370,545.97 |
| Robert Fien, Attorney at Law<br>331 J Street, Suite 200<br>Sacramento, CA 95814 | T | | 2001<br>Attorney | 1,750.22 |
| Robert Harris<br>PO Box 158<br>Whitmore, CA 96096 | T | | 2001<br>Consulting Services | 9,187.50 |
| Robert Nelson<br>2500 Rose Walk<br>Berkeley, CA 94110 | T | | 2001<br>Consulting Services | 5,080.51 |
| Ross Hewitt<br>4425 Marley Drive<br>Sacramento, CA 95821 | T | | 2001<br>Consulting Services | 925.00 |
| RSG Energia Ltd.<br>631 S. Washington Street<br>Alexandria, VA 22314 | T | | 1998<br>Travel Expenses | 6,812.18 |
| Sacramento Bee<br>2100 Q Street/ Box 15120<br>Sacramento, CA 95851 | T | | 2001<br>Advertisement | 750.62 |
| SB Consult A/S<br>August Cappelens Gate 2<br>0360 Oslo, Norway | T | | 2001<br>Consulting Services | 3,000.00 |
| Science Applications International Corp<br>10260 Campus Point Drive<br>San Diego, CA 92121 | T | | 2001<br>Consulting Services | 112,364.92 |
| Sea Tek International<br>306 Arthur Avenue<br>Aptos, CA 95003 | T | | 2000/2001/2002<br>Consulting Services | 54,667.35 |
| Sierra Sprng Water Company<br>P.O. Box 13798<br>Sacramento, CA 95853 | T | | 2002<br>Bottled Water | 14.50 |
| Sigma Electronteknisk A.S.<br>N-1550 Holen, Norway | T | | 2000<br>Equipment purchase | 16,500.00 |

Ocean Power Corporation
Creditor List as of 11/1/02

| Creditor List | Type | Account Number | Date Claim Was Incurred and Consideration For Claim | Amount of Claim |
|---|---|---|---|---|
| Sprint P.O. Box 79255 City of Industry, CA 91716 | T | 923471516 | 2002 Long Distance Telephone Service | 374.63 |
| Sprint P.O. Box 79255 City of Industry, CA 91716 | T | 921257258 | 2002 Calling Cards | 132.33 |
| Stirling Supply 3921 S.W. 47th Avenue, Suite 1019 Davie, Fl 33314 | T | 9169338100 | 2001 Office Supplies | 225.48 |
| SW Bailey Construction 3667 Recycle Rd, Suit #10 Rancho Cordova, CA 95742 | T | | 2001 Facility Improvements | 32,511.47 |
| Synergics Corporation 501 E. Lake Sue Avenue Winter Park, FL 32789 | T | | 2001 Finder's Fees | 114,040.00 |
| Synergy International & Partners 3rd Floor Via Pretorio 11 Ticino, Lugano Switzerland, CH 6900 | T | | 2001 & 2002 Consulting Services | 20,545.00 |
| The Hartford P.O. Box 79212 City of Industry, CA 91716 | T | | 2002 Insurance Premium | 1,099.24 |
| The Taxin Network 115 Obre Place Swewsbury, NJ 07702 | T | | 2000 Advertising & Promotional Services | 47,000.00 |
| Thomas Redmon 4800 Oak Vista Drive Carmichael, CA 95608 | T | | 1/3/02 SEC Seminar & Travel Expenses | 765.55 |
| Tri-Tech Metals Inc. 9450 7th Street, Unit E Rancho Cucamonga, CA 91730 | T | | 2001 R&D Supplies | 4,405.00 |
| United Corporate Furnishing 1780 No. Market Blvd Sacramento, CA 95834 | T | | 2001 Office Furniture | 25,984.99 |
| VeriSign PO Box 17305 Baltimore, MD 21297 | T | | 2002 Internet Address | 70.00 |
| Verizon P.O. Box 1100 Albany, NY 12250 | T | | 2002 Telephone Service | 609.20 |
| Volt File #53102 Los Angeles, CA 90074 | T | | 2001 Temporary Placement Services | 14,920.00 |
| Waselius & Wist Etelaesplanadi 24 A 00130 Helesinki, Finland | T | | 2001 Attorney | 152,768.12 |
| Watson & Lanctot 44 Montgomery Street, Suite 3585 San Francisco, CA 94104 | T | | 2001 Attorney | 3,412.56 |
| Weil, Gotshal & Magnus, LLP 767 Fifth Avenue New York, NY 10153 | T | | 2002 Attorney | 1,750.00 |
| Wharton University of Pennsylvania Steinberg Conference Center, Suite 224 225 South 38th Street Philadelphia, PA 19104 | T | | 2001-2002 Executive MBA Program | 57,600.00 |
| Wilke, Fluery, Hoffelt, Gould & Birney 400 Capital Mall, 22nd Floor Sacramento, CA 958144 | T | | 2000,2001,2002 Attorney | 67,441.04 |

Ocean Power Corporation
Creditor List as of 11/1/02

| Creditor List | Type | Account Number | Date Claim Was Incurred and Consideration For Claim | Amount of Claim |
|---|---|---|---|---|
| Barry G. Bampton<br>5295 Gulf Place<br>West Vancouver, B.C.<br>Canada V7W 2V9 | N | | 2/21/02 Convertible Debenture<br>$50,000 Loan | 54,142.88 |
| Barry G. Bampton<br>5295 Gulf Place<br>West Vancouver, B.C.<br>Canada V7W 2V9 | N | | 3/26/02 Convertible Debenture<br>$50,000 Loan | 53,600.36 |
| Barry G. Bampton<br>5295 Gulf Place<br>West Vancouver, B.C.<br>Canada V7W 2V9 | N | | 5/9/02<br>$20,000 Loan | 21,151.50 |
| Barry G. Bampton<br>5295 Gulf Place<br>West Vancouver, B.C.<br>Canada V7W 2V9 | N | | 5/13/02<br>$10,000 Loan | 10,562.56 |
| Barry G. Bampton<br>5295 Gulf Place<br>West Vancouver, B.C.<br>Canada V7W 2V9 | N | | 5/23/02<br>$20,000 Loan | 21,059.38 |
| Barry G. Bampton<br>5295 Gulf Place<br>West Vancouver, B.C.<br>Canada V7W 2V9 | N | | 5/29/02<br>$15,000 Loan | 15,764.15 |
| Barry G. Bampton<br>5295 Gulf Place<br>West Vancouver, B.C.<br>Canada V7W 2V9 | N | | 6/3/02<br>$10,000 Loan | 10,493.50 |
| Barry G. Bampton<br>5295 Gulf Place<br>West Vancouver, B.C.<br>Canada V7W 2V9 | N | | 6/13/02<br>$5,000 Loan | 5,229.60 |
| Barry G. Bampton<br>5295 Gulf Place<br>West Vancouver, B.C.<br>Canada V7W 2V9 | N | | 8/8/02<br>$25,000 Loan | 25,690.48 |
| Bylin Heating Systems, Inc.<br>Profit Sharing Pension Plan<br>4800 Golden Foothill Parkway<br>El Dorado Hills, CA 95762 | N | | 7/11/01 Promissory Note<br>$200,000 Loan | 226,161.65 |
| Carl Fricke<br>32 Partridge Drive<br>San Rafael, CA 94901 | N | | 7/24/01 Promissory Note<br>$50,000 Loan | 56,362.60 |
| Carl Fricke<br>32 Partridge Drive<br>San Rafael, CA 94901 | N | | 8/1/01 Promissory Note<br>$50,000 Loan | 56,252.71 |
| Cokomodo Investments LLP<br>c/o Curtis Olsen<br>2965 Broadmoore Valley Road<br>Colorado Springs, CO 80906 | N | | 1/29/02 Promissory Note<br>$75,000 Loan | 82,345.25 |
| Cokomodo Investments LLP<br>c/o Curtis Olsen<br>2965 Broadmoore Valley Road<br>Colorado Springs, CO 80906 | N | | 6/24/02 Promissory Note<br>$50,000 Loan | 52,297.49 |
| Cornell Capital Partners, LP<br>10 Exchange Place, Suite 1404<br>Jersey City, NJ 07302 | N | | 11/29/01 Convertible Debenture<br>$500,000 Loan | 436,881.73 |
| Daniel Chestler<br>5 Justin Road<br>Harrison, NY 10528 | N | | 2/13/02 Promissory Note<br>$25,000 Loan | 27,314.00 |
| Dr. David Weissberg<br>175 E. Main Street #105<br>Huntington, NY 11743 | N | | 8/29/01 Promissory Note<br>$50,000 Loan | 55,868.10 |

Ocean Power Corporation
Creditor List as of 11/1/02

| Creditor List | Type | Account Number | Date Claim Was Incurred and Consideration For Claim | Amount of Claim |
|---|---|---|---|---|
| Edward Freidberg trustee<br>Freidberg Law Corporation Pension Plan<br>650 University Avenue<br>Sacramento, CA 95825 | N | | 8/8/01 Promissory Note<br>$100,000 Loan | 112,313.12 |
| Edward T. Engle, Jr.<br>30 Walnut Avenue<br>Mill Valley, CA 94941 | N | | 9/4/01 Promissory Note<br>$10,000 Loan | 11,157.14 |
| Freedom Funding Inc.<br>East Bay Centre<br>Suite B66<br>P.O.Box N 1836<br>Nassau, Bahamas | N | | 11/16/99 Convertible Debenture<br>$350,000 Loan | 432,159.98 |
| Freedom Funding Inc.<br>East Bay Centre<br>Suite B66<br>P.O.Box N 1836<br>Nassau, Bahamas | N | | 11/16/99 Convertible Debenture<br>$100,000 Loan | 123,476.32 |
| Freedom Funding Inc.<br>East Bay Centre<br>Suite B66<br>P.O.Box N 1836<br>Nassau, Bahamas | N | | 8/20/01 Convertible Debenture<br>$42,000 Converted 2000 Interest | 48,034.97 |
| Freedom Funding Inc.<br>East Bay Centre<br>Suite B66<br>P.O.Box N 1836<br>Nassau, Bahamas | N | | 8/20/01 Convertible Debenture<br>$12,000 Converted 2000 Interest | 13,726.15 |
| Freedom Funding Inc.<br>East Bay Centre<br>Suite B66<br>P.O.Box N 1836<br>Nassau, Bahamas | N | | 4/10/02 Convertible Debenture<br>$100,000 Loan | 106,707.52 |
| Gloria Rose Ott<br>20250 Edgewood Farm Lane<br>Purcellville, VA 20132 | N | | 2001 & 2002<br>Loans | 23,500.00 |
| J. Michael Hopper<br>2803 Belhaven Place<br>Davis, CA 95616 | N | | 12/31/98 Promissory Note<br>$246,350.00 | 110,056.97 |
| Jay Watson<br>NFusion<br>8121 Beecave<br>Austin, TX 78746 | N | | 3/6/02 Promissory Note<br>$50,000 Loan | 54,256.59 |
| John Cavalier<br>c/o Credit Suisse First Boston<br>Eleven Madison Avenue<br>New York, NY 10010 | N | | 2/26/02 Promissory Note<br>$25,000 Loan | 27,198.30 |
| John V. Doyle<br>c/o Hibernia Capital Management, LLC<br>3 Club Road<br>Rye, NY 10580 | N | SECURED | 3/5/01 Promissory Note<br>$500,000 Loan | 601,544.00 |
| Joseph Maceda<br><br>Sidney Center, NY 13839 | N | | 12/31/98 Promissory Note<br>$437,377.41 | 237,403.75 |
| Joseph Maceda<br><br>Sidney Center, NY 13839 | N | | 12/31/97 Promissory Note<br>$656,250.00 Loan | 253,927.25 |
| Kare Anderson<br>15 Sausalito Blvd<br>Sausalito, CA 94065 | N | | 9/4/01 Promissory Note<br>$15,000 Loan | 16,735.70 |
| Latham & Watkins<br>885 Third Avenue<br>NY,NY 10022 | N | | 5/11/02 Demand Promissory Note<br>Debt Conversion of Legal Services | 567,548.32 |

Ocean Power Corporation
Creditor List as of 11/1/02

| Creditor List | Type | Account Number | Date Claim Was Incurred and Consideration For Claim | Amount of Claim |
|---|---|---|---|---|
| Lori O'Brien<br>9232 Caspiane Way<br>Sacramento, CA 95826 | N | | 12/31/98 Promissory Note<br>$81254.73 | 67,481.88 |
| Melaroba Corporation<br>122 Yukon Drive<br>Woodbury, NY 11791 | N | | 10/12/01 Promissory Note<br>$225,000 Loan | 248,683.61 |
| Michael  D. Lockwood<br>c/o Algonquin Capital Management, LLC<br>440 Main Street<br>Ridgefield, CT 06877 | N | SECURED | 3/5/01 Promissory Note<br>$2,500,000 Loan | 3,007,720.00 |
| Michael  D. Lockwood<br>c/o Algonquin Capital Management, LLC<br>440 Main Street<br>Ridgefield, CT 06877 | N | SECURED | 9/19/01 Promissory Note<br>$500,000 Loan | 561,082.70 |
| Michael  D. Lockwood<br>c/o Algonquin Capital Management, LLC<br>440 Main Street<br>Ridgefield, CT 06877 | N | SECURED | 8/16/02 Senior Secured Demand<br>Promissory Note<br>$20,000 Loan | 20,632.94 |
| Michael  D. Lockwood<br>c/o Algonquin Capital Management, LLC<br>440 Main Street<br>Ridgefield, CT 06877 | N | SECURED | 8/23/02 Senior Secured Demand<br>Promissory Note<br>$15,000 Loan | 15,575.40 |
| Michael  D. Lockwood<br>c/o Algonquin Capital Management, LLC<br>440 Main Street<br>Ridgefield, CT 06877 | N | SECURED | 8/29/02 Senior Secured Demand<br>Promissory Note<br>$15,000 | 15,526.08 |
| Michael  D. Lockwood<br>c/o Algonquin Capital Management, LLC<br>440 Main Street<br>Ridgefield, CT 06877 | N | SECURED | 9/5/02 Senior Secured Demand<br>Promissory Note<br>$10,000 Loan | 10,468.54 |
| Nicole Ann Bampton<br>5295 Gulf Place<br>West Vancouver, B.C.<br>Canada V7W 2V9 | N | | 3/26/02 Convertible Debenture<br>$25,000 Loan | 26,800.18 |
| Nicole Louise Bampton<br>5295 Gulf Place<br>West Vancouver, B.C.<br>Canada V7W 2V9 | N | | 3/26/02 Convertible Debenture<br>$25,000 Loan | 26,800.18 |
| Qingjun (Robert) Zhao<br>3416 Smokey Mountain Circle<br>El Dorado Hills, CA 95762 | N | | 12/31/98 Promissory Note<br>$161,167.10 | 144,504.43 |
| Regis Investment Co. Ltd.<br>5295 Gulf Place<br>West Vancouver, B.C.<br>Canada V7W 2V9 | N | | 8/20/01 Convertible Debenture<br>$5,000 Converted 2000 Interest | 5,716.68 |
| Robert Campbell<br>15009 Rio Circle<br>Rancho Murietta, CA 95683 | N | | 12/31/98 Promissory Note<br>$278,810.67 | 267,743.45 |
| Robert Campbell<br>15009 Rio Circle<br>Rancho Murietta, CA 95683 | N | | 11/21/01 Promissory Note<br>$215,000 Loan | 235,263.01 |
| Robert Leibowits<br>590 Madison Ave 34th Floor<br>New York, NY 10022 | N | | 12/31/99 Promissory Note<br>$50,000 Loan | 78,878.02 |
| Stephanie Hosey<br>3923 Weybridge Way<br>Antelope, CA 95843 | N | | 12/31/98 Promissory Note<br>$22,910.60 | 7,036.27 |
| Summit Petroleum Corporation<br>1315 South Mission Road<br>Mount Pleasant, MI 48858 | N | | 8/7/01 Promissory Note<br>$150,000 Loan | 168,510.88 |

Ocean Power Corporation
Creditor List as of 11/1/02

| Creditor List | Type | Account Number | Date Claim Was Incurred and Consideration For Claim | Amount of Claim |
|---|---|---|---|---|
| Venture Investment Group, Inc.<br>5295 Gulf Place<br>West Vancouver, B.C.<br>Canada V7W 2V9 | N | | 3/7/02 Convertible Debenture<br>$100,000 Loan | 107,825.44 |
| Venture Investment Group, Inc.<br>5295 Gulf Place<br>West Vancouver, B.C.<br>Canada V7W 2V9 | N | | 11/16/99 Convertible Debenture<br>$100,000 Loan | 123,476.32 |
| Venture Investment Group, Inc.<br>5295 Gulf Place<br>West Vancouver, B.C.<br>Canada V7W 2V9 | N | | 8/20/01 Convertible Debenture<br>$12,000 Converted 2000 Interest | 13,726.15 |
| Venture Investment Group, Inc.<br>5295 Gulf Place<br>West Vancouver, B.C.<br>Canada V7W 2V9 | N | | 8/20/01 Convertible Debenture<br>$200,000 Loan | 228,798.50 |
| Venture Investment Group, Inc.<br>5295 Gulf Place<br>West Vancouver, B.C.<br>Canada V7W 2V9 | N | | 8/22/01 Convertible Debenture<br>$100,000 Loan | 114,302.80 |
| Venture Investment Group, Inc.<br>5295 Gulf Place<br>West Vancouver, B.C.<br>Canada V7W 2V9 | N | | 9/14/01 Convertible Debenture<br>$100,000 Loan | 113,546.56 |
| Venture Investment Group, Inc.<br>5295 Gulf Place<br>West Vancouver, B.C.<br>Canada V7W 2V9 | N | | 10/29/01 Convertible Debenture<br>$100,000 Loan | 112,066.96 |
| Venture Investment Group, Inc.<br>5295 Gulf Place<br>West Vancouver, B.C.<br>Canada V7W 2V9 | N | | 11/16/01 Convertible Debenture<br>$100,000 Loan | 111,475.12 |
| Venture Investment Group, Inc.<br>5295 Gulf Place<br>West Vancouver, B.C.<br>Canada V7W 2V9 | N | | 12/18/01 Convertible Debenture<br>$100,000 Loan | 110,422.96 |
| Venture Investment Group, Inc.<br>5295 Gulf Place<br>West Vancouver, B.C.<br>Canada V7W 2V9 | N | | 1/14/02 Convertible Debenture<br>$100,000 Loan | 109,535.20 |
| Venture Investment Group, Inc.<br>5295 Gulf Place<br>West Vancouver, B.C.<br>Canada V7W 2V9 | N | | 1/22/02 Convertible Debenture<br>$100,000 Loan | 109,272.16 |
| Venture Investment Group, Inc.<br>5295 Gulf Place<br>West Vancouver, B.C.<br>Canada V7W 2V9 | N | | 1/30/02 Convertible Debenture<br>$100,000 Loan | 109,009.12 |
| Vesta Forsikring<br>c/o Sundal Collier & Co.<br>P.O.Box 1444 Vika<br>N-0115 Oslo<br>Norway | N | | 4/2/01 Promissory Note<br>$240,000 Loan | 277,988.00 |
| Vesta Liv<br>c/o Sundal Collier & Co.<br>P.O.Box 1444 Vika<br>N-0115 Oslo<br>Norway | N | | 4/2/01 Promissory Note<br>$360,000 Loan | 416,983.52 |
| Wendall H. Adair, Jr.<br>5682 Sawyer Road<br>Sawyer, MI 49125 | N | | 2/1/02 Promissory Note<br>$25,000 Loan | 27,420.80 |

Ocean Power Corporation
Creditor List as of 11/1/02

| Creditor List | Type | Account Number | Date Claim Was Incurred and Consideration For Claim | Amount of Claim |
|---|---|---|---|---|
| William Barron 9132 Mountain Run Lake Road Culpeper, VA 22701 | N | | 7/24/01 Promissory Note $50,000 Loan | 56,362.60 |
| YuYan Luo 3416 Smokey Mountain Circle El Dorado Hills, CA 95762 | N | | 12/31/98 Promissory Note $100,736.87 | 87,389.00 |
| Daniel D. McHargue P.O. Box 5218 Fair Oaks, CA 95628 | J | | 3/22/02 Judgement | 66,682.79 |
| Jon Hanlon 7260 Dragon Point Road Latrobe, CA 95682 | J | | 9/23/02 Judgement for dental claims | 618.00 |
| El Dorado County Treasurer-Tax Collector 360 Fair Lane Placerville, CA 95667-4197 | GOV | 1-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 | 2001 & 2002 Property Taxes | 6,007.30 |
| State of Delaware Division of Corporations P.O. Box 74072 Baltimore, MD 21274 | GOV | | 2001 Franchise Taxes | 42,860.00 |
| State of Delaware Division of Corporations P.O. Box 74072 Baltimore, MD 21274 | GOV | | 2000 Franchise Taxes | 61,445.00 |
| Blair Aiken P.O.B. 61 Stanford, NY 12167 | E | | 2002 Payroll | 102,000.00 |
| Blair Aiken P.O.B. 61 Stanford, NY 12167 | E | | 2002 Vacation & PTO | 15,168.00 |
| Cheng-Guan Michael Quah 67 Canney Road Durham, NH 03824 | E | | 2002 Payroll | 158,769.07 |
| Cheng-Guan Michael Quah 67 Canney Road Durham, NH 03824 | E | | 2002 Vacation & PTO | 3,304.63 |
| David Moard 1545 S. El Molino Avenue Pasadena, CA 91106 | E | | 2002 Payroll | 225,128.44 |
| David Moard 1545 S. El Molino Avenue Pasadena, CA 91106 | E | | 2002 Vacation & PTO | 10,818.50 |
| Eric Adema 10 Christopher Street, #5E New York, NY 10014 | E | | 2002 Payroll | 73,769.29 |
| Eric Adema 10 Christopher Street, #5E New York, NY 10014 | E | | 2002 Vacation & PTO | 3,467.68 |
| Gloria Rose Ott 20250 Edgewood Farm Lane Purcellville, VA 20132 | E | | 2000 CEO remuneration | 27,500.00 |
| Gustavo Guzman 32 Los Cabos Dana Point, CA 92629 | E | | 2002 Payroll | 27,384.64 |
| Gustavo Guzman 32 Los Cabos Dana Point, CA 92629 | E | | 2002 Vacation & PTO | 3,690.10 |
| J. Michael Hopper 2803 Belhaven Place Davis, CA 95616 | E | | 2002 Payroll | 144,000.00 |
| J. Michael Hopper 2803 Belhaven Place Davis, CA 95616 | E | | 2002 Vacation & PTO | 40,000.00 |

Ocean Power Corporation
Creditor List as of 11/1/02

| Creditor List | Type | Account Number | Date Claim Was Incurred and Consideration For Claim | Amount of Claim |
|---|---|---|---|---|
| Joan Hosey<br>5709 Terrace Drive<br>Rocklin, CA 95765 | E | | 2002 Payroll | 21,115.44 |
| Joan Hosey<br>5709 Terrace Drive<br>Rocklin, CA 95765 | E | | 2002 Vacation & PTO | 7,976.94 |
| Joel Rich<br>2935 West River Drive<br>Sacramento, CA 95833 | E | | 2002 Payroll | 19,365.37 |
| Joel Rich<br>2935 West River Drive<br>Sacramento, CA 95833 | E | | 2002 Vacation & PTO | 1,630.40 |
| John Grimes<br>1362 Young Wo Circle<br>Folsom, CA 95630 | E | | 2002 Payroll | 34,615.40 |
| John Grimes<br>1362 Young Wo Circle<br>Folsom, CA 95630 | E | | 2002 Vacation & PTO | 10,280.66 |
| Jon Hanlon<br>7260 Dragon Point Road<br>Latrobe, CA 95682 | E | | 2002 Payroll | 28,836.20 |
| Jon Hanlon<br>7260 Dragon Point Road<br>Latrobe, CA 95682 | E | | 2002 Vacation & PTO | 4,459.59 |
| Joseph Maceda<br><br>Sidney Center, NY 13839 | E | | 1999 Payroll | 91,868.00 |
| Joseph Maceda<br><br>Sidney Center, NY 13839 | E | | 2001 Payroll | 26,407.54 |
| Joseph Maceda<br><br>Sidney Center, NY 13839 | E | | 2002 Payroll | 157,469.48 |
| Joseph Maceda<br><br>Sidney Center, NY 13839 | E | | 2002 Vacation & PTO | 40,106.50 |
| Kevin Tyson<br>17 Coralyn Avenue<br>White Plains, NY 10605 | E | | 2002 Payroll | 161,346.11 |
| Kevin Tyson<br>17 Coralyn Avenue<br>White Plains, NY 10605 | E | | 2002 Vacation & PTO | 6,032.00 |
| Lori O'Brien<br>9232 Caspiane Way<br>Sacramento, CA 95826 | E | | 2002 Payroll | 28,826.97 |
| Lori O'Brien<br>9232 Caspiane Way<br>Sacramento, CA 95826 | E | | 2002 Vacation & PTO | 9,863.69 |
| Qingjun (Robert) Zhao<br>3416 Smokey Mountain Circle<br>El Dorado Hills, CA 95762 | E | | 2002 Payroll | 36,923.00 |
| Qingjun (Robert) Zhao<br>3416 Smokey Mountain Circle<br>El Dorado Hills, CA 95762 | E | | 2002 Vacation & PTO | 18,461.50 |
| Randall L. Peeters<br>4404 Morning Star Place<br>Foresthill, CA 95631 | E | | 2002 Payroll | 77,078.00 |
| Robert Campbell<br>15009 Rio Circle<br>Rancho Murietta, CA 95683 | E | | 1999 Payroll | 25,233.32 |
| Robert Campbell<br>15009 Rio Circle<br>Rancho Murietta, CA 95683 | E | | 2001 Payroll | 26,407.54 |

**Ocean Power Corporation**
**Creditor List as of 11/1/02**

| Creditor List | Type | Account Number | Date Claim Was Incurred and Consideration For Claim | Amount of Claim |
|---|---|---|---|---|
| Robert Campbell 15009 Rio Circle Rancho Murietta, CA 95683 | E | | 2002 Payroll | 142,416.13 |
| Robert Campbell 15009 Rio Circle Rancho Murietta, CA 95683 | E | | 2002 Vacation & PTO | 37,483.53 |
| Sergey Puzhaev 2972 Oakleaf Drive Cameron Park, CA 95682 | E | | 2002 Payroll | 41,730.65 |
| Sergey Puzhaev 2972 Oakleaf Drive Cameron Park, CA 95682 | E | | 2002 Vacation & PTO | 5,384.60 |
| Stephanie Hosey 3923 Weybridge Way Antelope, CA 95843 | E | | 2002 Payroll | 13,846.14 |
| Stephanie Hosey 3923 Weybridge Way Antelope, CA 95843 | E | | 2002 Vacation & PTO | 5,249.23 |
| Thomas Redmon 4800 Oak Vista Drive Carmichael, CA 95608 | E | | 2001 & 2002 Payroll | 107,917.80 |
| Thomas Redmon 4800 Oak Vista Drive Carmichael, CA 95608 | E | | 2002 Vacation & PTO | 9,247.52 |
| Wendy Kwok Rich 2935 West River Drive Sacramento, CA 95833 | E | | 2002 Payroll | 23,077.00 |
| Wendy Kwok Rich 2935 West River Drive Sacramento, CA 95833 | E | | 2002 Vacation & PTO | 7,047.72 |
| YuYan Luo 3416 Smokey Mountain Circle El Dorado Hills, CA 95762 | E | | 2002 Payroll | 23,077.00 |
| YuYan Luo 3416 Smokey Mountain Circle El Dorado Hills, CA 95762 | E | | 2002 Vacation & PTO | 7,347.72 |
| | | | | |
| Total | | | | 15,614,020.20 |
| | | | | |
| | | | | |
| Type Legend: | | | | |
| T = Trade | | | | |
| N = Notes, debentures, loans | | | | |
| J = Judgements | | | | |
| GOV = Taxes | | | | |
| E = Employees | | | | |
| | | | | |
| | | | | |

**EXHIBIT "2"**

May-28-02     04:28     From-ETG RIDGEFIELD               +203 804 8484        T-660   P.002/008   F-773

# PROMISSORY NOTE AND GUARANTY

### Exhibit 1

$2,500,000.00                                      Date: 5 March, 2001

**FOR VALUE RECEIVED**, The undersigned, Ocean Power Corporation, a Delaware Corporation ("Obligor"), promises to pay to the order of Michael D. Lockwood and his successor or assigns (each an "Obligee") at 5000 Robert J. Mathews Parkway, El Dorado Hills, California 95762, the sum of Two Million Five Hundred Thousand Dollars ($2,500,000) with interest thereon from the date hereof until paid, at the rate of ten and one half percent (10.5%) per annum, in accordance with the following schedule:

| PAYMENT DATE | AMOUNT |
|---|---|
| September 5, 2001 | All Accrued but unpaid interest |
| December 5, 2001 | All accrued but unpaid interest |
| March 5, 2002 | All unpaid principal and accrued but unpaid interest |

Should interest or principal not be paid when due, all interest and principal shall thereafter bear interest at a rate of 13.5%. Principal and interest are payable in lawful money of the United States.

Ocean Power Corporation may make payments on the principal of this Note at any time without penalty, provided any such payments shall first be credited to costs, expenses, fees or penalties due, then to interest due, then to principal.

Obligor hereby covenants and agrees that until this Note is paid in full, it shall (i) incur no indebtedness that is not expressly subordinated to the prior payment in full of all payments due under this Note or (ii) grant, or suffer to exist any lien, pledge or other security interest on all or any portion of its assets.

In the event that (i) Obligor shall commence a voluntary case or proceeding for relief, or an involuntary case or proceeding shall be commenced against Obligor seeking relief with respect to Obligor's debts, under bankruptcy, insolvency or other similar law now or hereafter in effect (ii) Obligor seeks, or if any third party seeks in an involuntary proceeding, the appointment of a trustee, liquidator, receiver, custodian or other similar official for all or a substantial portion of Obligor's assets, (iii) Obligor shall consent to such relief or to the appointment of, or taking possession by, any such official in an involuntary case or other proceeding commenced against him or (iv) Obligor shall make a general assignment for the benefit of creditors, or shall fail generally to pay debts when due, then, without any action by Obligee, in each case the entire amount payable under this Note shall become immediately due and payable.

Obligor and all others who may become liable for the payment of all or any part of this obligation do hereby severally waive presentation for payment, protest and demand, notice of protest, demand and dishonor, or nonpayment of this Note, and agree that the duties and obligations of Obligors, or anyone else who may become liable hereunder, may be extended from time to time without affecting the liability of each. An Obligee may consent to any extension of time regarding the payment hereof, or the release of any party liable for this

w:\p\finaldocs\lockwood\promnotelock.wd

ALG000004

# PROMISSORY NOTE AND GUARANTY

obligation. Any such extension or release may be made without notice to any of such parties and without discharging their liability. The holder(s) hereof shall not be deemed by any act, or omission, to have waived any of its rights or remedies hereunder unless such waiver is set forth in such writing.

None of the rights or remedies of the holder hereunder are waived or affected by failure or delay to exercise them. All remedies conferred on holder by this Note or any other instrument or agreement shall be cumulative and none are exclusive. Such remedies may be exercised concurrently or consecutively at the holder's option.

Obligor promises to pay reasonable attorney's fees and costs incurred in collection and/or enforcement of this Note or any part hereof, and in the event of any Court action, all costs and such additional sums as attorney's fees as the Court may adjudge reasonable.

This Note shall be assignable in whole or in part without the consent of Obligor provided that no such partial assignment shall be for a principal amount of less than Five Hundred Thousand Dollars ($500,000.00).

The laws of the State of New York applicable to agreements made and to be performed entirely within state shall govern the validity, construction performance and effect of this Note. Obligor irrevocably and unconditionally submits to and accepts the exclusive jurisdiction of any United States federal court sitting in the Borough of Manhattan, City of New York for any action, suit, or proceeding arising out of or based upon this Note or any matter relating to it, and waives any objection it may have to the laying of venue in any such court or that such court is an inconvenient forum or does not have personal jurisdiction over it.

OCEAN POWER CORPORATION

By: _____
    Joseph P. Maceda, President

w:/p/fixeddocs/lockwood/promnoteslockwd

ALG000005

**EXHIBIT "3"**

# GUARANTY

GUARANTY given by Joseph P. Maceda, the undersigned, to induce the acceptance of the within note (the "Note") by the Ocean Power Corporation.

1.    *Obligation.*    In consideration of the loan made upon the Note, the undersigned hereby unconditionally guarantees to the Ocean Power Corporation, it successors, and assigns, and to every subsequent holder of the Note, irrespective of the genuineness, validity, regularity, or enforceability thereof, or of the obligation evidenced thereby, or of an collateral therefore, or of the existence, extent, or values of any such collateral, irrespective of any other circumstance, that all sums stated therein to be payable on the Note shall be promptly paid in full, in accordance with the provisions thereof, whether at maturity, by acceleration or otherwise, and in case of any extension or extensions, renewal or renewals.

2.    *Consent.*    The undersigned hereby consents that at any time, without notice to the undersigned, payment of any sums payable on the Note, or of any of the collateral therefore, may be extended, or the Note or any of such collateral may be renewed in whole or in part, or any of such collateral may be exchanged, surrendered, or otherwise dealt with as the holder of the Note may determine, or any party of the Note may be done, all without affecting the liability of the undersigned.

3.    *Waiver.*    The undersigned hereby waives presentment, demand for payment by the maker or anyone else, protest, and notice of nonpayment, dishonor, or protest of the Note, and all other notices and demands.

Dated:_____, 2001
    New York, New York

_____
Joseph P. Maceda, President

Dated: ____3/___ _____, 2001

ALG000006

**EXHIBIT "4"**

May-30-02  03:42  From-ETG RIDGEFIELD                    +203 804 8434          T-983  P.002/060  F-604

## SECURITY AGREEMENT

This Security Agreement is entered into on May ᵡᵉ, 2002, between Ocean Power Corporation, a Delaware corporation, ("Debtor"), with its principal place of business located at 5000 Robert J. Mathews Parkway, El Dorado Hills, California 95762 on the one hand, and Michael D. Lockwood, Algonquin Capital Management L.L.C. and John V. Doyle (each a "Secured Party") on the other hand.

A.  For good and valuable consideration, receipt of which is hereby acknowledged, as collateral security for all indebtedness, obligations and other liabilities owed by the Debtor to any Secured Party now or hereafter arising, including, without limitation, the following obligations:

(1)  The Debtor's notes of (a) Two Million Five Hundred Thousand ($2,500,000.00) dated March 5, 2001 payable to Michael D. Lockwood, (b) Five Hundred Thousand ($500,000.00) dated September 19, 2001 payable to Michael D. Lockwood, and (c) Five Hundred Thousand ($500,000.00) dated March 5, 2001 payable to John V. Doyle (collectively, the "Notes"), payable as to principal and interest as provided in each note;

(2)  Any future advances by a Secured Party to the Debtor, and

(3)  All other liabilities and obligations of the Debtor to any Secured Party now existing or incurred in the future, matured or unmatured, direct or contingent, and any renewals, extensions, and substitutions of those liabilities,

the Debtor hereby grants to each Secured Party a first priority lien on and security interest in (a) all capital stock of any Subsidiary of the Debtor, and (b) all personal property, real property, accounts receivables, inventory, equipment, machinery, fixtures, contractual rights (including, any right to indemnification thereunder), intellectual property (including, without limitation, trademarks, copyrights, patents (including without limitation, the patents and patent applications identified in Exhibit 1)), all moneys, securities, investment property, financial assets and other property, rights to cash settlements, all books and records relating to the Collateral, of the Debtor, in each instance, wherever located and whether now or hereafter existing and whether now owned or hereafter acquired, of every kind and description, tangible or intangible.

B.  The Debtor agrees and represents and warrants to each Secured Party that:

(1)  General Representations and Warranties: (a) the Debtor is a corporation duly organized, validly existing and in good standing under the laws of the jurisdiction of its incorporation; (b) the execution, delivery and performance by the Debtor of this Security Agreement and financing statements delivered by the Debtor to the Secured Parties in connection with this Security Agreement (the Security Agreement, together with the financing statements, are hereinafter referred to individually as a "Document" and collectively as the "Documents") are within the Debtor's powers, have been duly authorized by all necessary action, and do not contravene (i) the Debtor's charter or by-laws or (ii) any contractual restriction or any law binding on or affecting the Debtor; (c) no authorization or approval or

9236331.5

other action by, and no notice to or filing with, any governmental authority or regulatory body is required for the due execution, delivery and performance by the Debtor of any Document except as may be required under applicable state and federal securities laws and regulations; (d) each Document constitutes the legal, valid and binding obligation of the Debtor, enforceable against the Debtor in accordance with its terms; and (e) there is no pending or to the Debtor's knowledge, threatened action or proceeding affecting the Debtor or any of its subsidiaries before any governmental agency or arbitrator which may materially adversely affect the financial condition or operation of the Debtor or any subsidiary.

(2)   **Use of Collateral:** The Collateral is used in business other than farming operations.

(3)   **Title:** Except for the security interest granted by this agreement, the Debtor has full title to the Collateral free from any lien, security interest, encumbrance, or claim, and the Debtor, at the Debtor's cost and expense, will defend any action that may affect a Secured Party's security interest in, or the Debtor's title to, the Collateral.

(4)   **Financing Statements:** No financing statement covering the Collateral or any part of it or any proceeds of it other than as may be executed in conjunction with this Security Agreement is on file in any public office. The Debtor shall, within two business days from the date hereof, execute and deliver to the Secured Parties all financing statements and other documents requested by the Secured Parties to maintain a first priority perfected security interest in the Collateral in favor of the Secured Parties. The Debtor will further execute all other instruments deemed necessary by the Secured Parties. Debtor shall not grant any third party (other than the Secured Parties) a security interest in all or any portion of the Collateral, or in any other assets of the Debtor including any assets held by any subsidiary of the Debtor, without the prior written consent of the Secured Parties.

(5)   **Sale, Lease, or Disposition of Collateral:** The Debtor will not sell, contract to sell, lease, encumber (including, without limitation, granting a security interest in all or any portion of the Collateral to any third party other than the Secured Parties), or dispose of the Collateral or any interest in it without the written consent of the Secured Parties until this Security Agreement and all obligations and debts secured by it have been fully satisfied.

(6)   **Reimbursement of Expenses:** At the option of the Secured Parties, the Secured Parties may discharge taxes, liens, interest, or perform or cause to be performed for and on behalf of the Debtor any actions and conditions, obligations, or covenants that the Debtor has failed or refused to perform. In addition, the Secured Parties may pay for the preservation of the Collateral. All sums expended by the Secured Parties under this paragraph, including but not limited to, attorneys' fees, court costs, agent's fees, or commissions, or any other costs or expenses, will bear interest from the date of payment at same rate as the Notes

9236331.5                          - 2 -

May-30-02   08:43    From-ETG RIDGEFIELD                4203 804 8484        T-663   P.004/008   F-004

referenced in Paragraph A.(1) above and will payable at the place designated in said Notes, and will be secured by this Security Agreement.

(7)     **Payment:** The Debtor will pay the Notes secured by this Security Agreement and any renewal or extension of it and any other indebtedness secured by this security Agreement in accordance with the terms and provisions of the indebtedness. The Debtor also will repay immediately all sums expended by the Secured Party in accordance with the terms and provisions of this Security Agreement. On full payment by the Debtor of all indebtedness secured by this Security Agreement in accordance with this Security Agreement, this Security Agreement will expire, and each Secured Party's security interest in the Collateral, as set forth in this Security Agreement, will terminate.

(8)     **Change of Place of Business:** The Debtor will promptly notify the Secured Parties of any change of the Debtor's chief place of business, or place where records concerning the Collateral are kept.

(9)     **Time of Performance and Waiver:** In performing any act under this Security Agreement and the Notes secured by it and any other Loan Document (as defined below), time is of the essence. Each Secured Party's acceptance of partial or delinquent payments, or the failure of a Secured Party to exercise any right or remedy, will not constitute a waiver of any obligation of the Debtor or right of such Secured Party and will not constitute a waiver of any other similar default that occurs later.

(10)    **Default:** The Debtor will be in default under this Security Agreement on the occurrence of any of the following events or conditions(each, an "Event of Default"):

        (a)     Default in the payment or performance of any notes, obligation, covenant, or liability secured by this Security Agreement, or

        (b)     Death, dissolution, termination of existence, insolvency, business failure, appointment of a receiver for any part of the Collateral, assignment for the benefit of creditors, or the commencement of any proceeding under any bankruptcy or insolvency law by or against the Debtor or any guarantor or surety for the Debtor.

(11)    **Remedies:** On the occurrence of any Event of Default, and at any later time, the Secured Parties may declare all obligations secured due and payable immediately and may proceed to enforce payment and exercise any and all of the rights and remedies provided by the New York Uniform Commercial Code as well as other rights and remedies either at law or in equity possessed by the Secured Parties. The Secured Parties may require the Debtor to assemble the Collateral and make it available to the Secured Parties at any place to be designated by the Secured Parties that is reasonably convenient to the Secured Parties and the Debtor. Unless the Collateral is perishable, threatens to decline speedily in value, or is of a

92365315                                    - 3 -

type customarily sold on a recognized market, the Secured Parties will give the Debtor reasonable notice of the time and place of any public sale or of the time after which any private sale or any other intended disposition of the Collateral is to be made. The requirements of reasonable notice will be met if the notice is mailed, postage prepaid, to the address of the Debtor shown at the beginning of this Security Agreement at least 10 days before the time of the sale or disposition. Expenses of retaking, holding, preparing for sale, selling, or the like will include each Secured Party's reasonable attorneys' fees and legal expenses.

(12)   **Governing Law:** This Security Agreement shall be governed by, and construed in accordance with the laws of the State of New York. The Debtor hereby (i) irrevocably submits to the jurisdiction of any court sitting in The City of New York in any action or proceeding arising out of or relating to this Security Agreement, (ii) waives any defense based on doctrines of venue or forum non conveniens, or similar rules or doctrines, and (iii) irrevocably agrees that all claims in respect of such an action or proceeding may be heard and determined in such New York State or Federal court. The Debtor and each Secured Party (by its acceptance hereof) mutually waive any right to trial by jury in any action, proceeding or counterclaim arising out of or relating to this Security Agreement.

(13)   **Parties Bound:** This Security Agreement will be binding on and inure to the benefit of the parties and their respective heirs, executors, administrators, legal representatives, successors, and assigns as permitted by this Security Agreement.

(14)   **Validity and Construction:** If any one or more of the provisions contained in this Security Agreement is for any reason held to be invalid, illegal, or unenforceable, the invalidity, illegality, or unenforceability of that provision will not affect any other provision of this Security Agreement, and this Security Agreement will be construed as if the invalid, illegal, or unenforceable provision had never been contained in it.

(15)   **Sole Agreement:** This Security Agreement constitutes the only agreement of the parties, and supersedes any prior understandings or written or oral agreements between the parties, respecting the subject matter of this Security Agreement.

(16)   **Commercial Code Definitions Applicable:** All terms used in this Security Agreement that are defined in the New York Uniform Commercial Code will have the same meaning in this Security Agreement as in the Code.

(17)   **Notices:** All notices or other communications provided for hereunder shall be in writing (including telecommunications) and shall be mailed, telecopied or delivered to the Debtor at the address of the Debtor set forth next to its signature, or at such other address as may hereafter be specified by the Debtor to the Secured Parties (at their respective addresses set forth herein) in writing. All notices and communications shall be effective (if) if mailed, when received or three days after mailing, whichever is earlier, (ii) if telecopied, when transmitted, (iii) if delivered, upon delivery.

92363315               - 4 -

(18)  **Expenses:**  In addition to the rights of the Secured Parties pursuant to Paragraph B.(6) above, the Debtor hereby agrees to pay on demand all costs and expenses (including, without limitation, fees, expenses, audit fees, search fees, filing fees and other client charges of counsel to the Security Parties) incurred by the Secured Parties in connection with the enforcement of any Secured Party's rights, and the collection of all amounts due, under any Loan Document.

(19)  **Subsidiary Transaction:**  In the event that a third party shall desire to enter into a proposed transaction with respect to any subsidiary of the Debtor or the assets of such subsidiary that comprise part of the Collateral (a "Subsidiary Transaction"), the parties hereto shall negotiate in good faith a release from the Collateral of such subsidiary stock and/or assets; provided, that the Secured Parties shall consent to the Subsidiary Transaction, which consent shall not be unreasonably withheld.

C.  The Debtor and each Secured Party agrees as follows:

(1)  **Security Interest and Lien Priorities:**  Notwithstanding the time, order or method of attachment or perfection of security interests, or the time or order of filing or recording of financing statements or the provisions of the Uniform Commercial Code or any applicable law or decision or any provision of the Notes or any Document, the relative priority of the security interest and liens of the Secured Parties arising under the Notes and the Documents and any other document or instrument now or hereafter evidencing indebtedness of the Debtor to a Secured Party (collectively, the "Loan Documents") shall be pari passu.

(2)  **Application of Proceeds after an Event of Default.**  Notwithstanding anything to the contrary in the Loan Documents, as between the Secured Parties, the proceeds of the Collateral, or any part thereof, after the occurrence and during the continuance of an event of default under any Loan Document (collectively, the "Proceeds of Collection") shall upon receipt by any Secured Party be paid to and applied to the Secured Parties ratably, in an amount up to the sum of all accrued interest owing to the Secured Parties on the obligations under the Loan Documents.

Any reference in the Security Agreement to an allocation between or sharing by the Secured Parties of any rights, interest or obligation "ratably," or in similar terms shall refer to the ratio, as of the date of such determination, of (a) the outstanding principal amount of such Secured Party's loans to the Debtor under such Secured Party's Loan Document to (b) the aggregate outstanding principal amount of all loans to the Debtor under the Loan Documents.

(3)  **Action To Be Taken By the Secured Parties:**  Any action to be taken by the Secured Parties pursuant to this Security Agreement shall require the approval of the Secured Parties holding a majority of the indebtedness evidenced by the Loan Documents.

DEBTOR:

OCEAN POWER CORPORATION

Joseph P. Maceda, President

5000 Robert J. Matthews Parkway
El Dorado Hills, California 95762
Telephone: —
Telecopy:

SECURED PARTIES:

ALGONQUIN CAPITAL MANAGEMENT L.L.C.

By:

Michael D. Lockwood

440 Main Street
Ridgefield, CT 06877
Attention: Michael D. Lockwood
Telephone: (203) 894-8464
Telecopy: (203) 894-8484

With a copy to:

Schulte Roth & Zabel LLP
919 Third Avenue
New York, New York 10022
Attention: Michael R. Littenberg, Esq.
Telephone: (212) 756-2000
Telecopy: (212) 593-5955

John V. Doyle

3 Club Rd.
Rye, New York 10580
Telephone: (914) 282-5742
Telecopy: (914) 967-5604

DATED: May 2, 2002

DATED: May 30, 2002

9296391.5

**EXHIBIT "5"**

## ASSIGNMENT AGREEMENT

For good and valuable consideration received, the undersigned, Michael D. Lockwood ("Lockwood") does hereby assign to Algonquin Capital Management LLC, a Delaware limited liability company, ("Algonquin") all of his right, title and interest in and to (1) the $2,500,000 Promissory Note and Guaranty dated March 5, 2001 executed by Ocean Power Corporation (the "Company") in favor of Lockwood, (2) the $500,000 Promissory Note and Guaranty dated September 19, 2001 executed by the Company in favor of Lockwood, (3) the $20,000 Senior Secured Demand Promissory Note dated August 16, 2002 executed by the Company in favor of Lockwood, (4) the $15,000 Senior Secured Demand Promissory Note dated August 23, 2002 executed by the Company in favor of Lockwood, (5) the $15,000 Senior Secured Demand Promissory Note dated August 29, 2002 executed by the Company in favor of Lockwood and (6) the $10,000 Senior Secured Demand Promissory Note dated September 5, 2002 executed by the Company in favor of Lockwood (collectively, the "Secured Notes").

Algonquin hereby accepts the foregoing assignment as of the date set forth below. Each of Algonquin and Lockwood hereby acknowledges and agrees that the Secured Notes are subject to the rights, terms and provisions of that certain Security Agreement dated May 30, 2002 among Lockwood, Algonquin, John V. Doyle and the Company.

This Assignment Agreement shall be governed by and construed in accordance with the laws of the State of New York and is effective as of September 25, 2002 upon the execution by both parties hereto.

_Michael D. Lockwood_
Michael D. Lockwood, Individually

ALGONQUIN CAPITAL MANAGEMENT, LLC

By _Michael D. Lockwood_
Michael D. Lockwood, [Managing Member]

[Lockwood]

**EXHIBIT "6"**

May-30-02   03:44   From-ETG RIDGEFIELD          +203 894 8484     T-863   P.000/000   F-804

# EXHIBIT 1

## Individual Patents or Patent Applications

Update: 5-15-02

| No. | Patent Title | Non-Provisional US Patent Application No. & Filed Date | US Patent No. & Date | PCT International Application No. & Filed Date | Other Countries - patent No. & Filed Date |
|---|---|---|---|---|---|
| | OPC Patents or Patent Applications | | | | |
| 1 | Method for Pretreating Water for Desalination | 09/941,175  28-Aug-2001 | | | |
| 2 | Method for Pretreating Water for Desalination | | | PCT/US01/26764  28-Aug-2001 | |
| 3 | Heat Exchange Element with Hydrophilic Evaporator Surface | 09/932,840  17-Aug-2001 | | | |
| 4 | Heat Exchange Element with Hydrophilic Evaporator Surface | | | PCT/US01/25702  16-Aug-2001 | |
| 5 | High Efficiency Steam Ejector for Desalination Applications | 09/932,841  17-Aug-2001 | | | |
| 6 | High Efficiency Steam Ejector for Desalination Applications | | | PCT/US01/25855  17-Aug-2001 | |
| 7 | STIRLING ENGINE WITH PLATELET MANIFOLD | 10/012,762  5-Nov-2001 | | | |
| 8 | STIRLING ENGINE HAVING PLATELET HEAT EXCHANGING ELEMENTS | 10/090,673  4-Mar-2002 | | | |
| | Patents Acquired through Merger with Sigma Electroteknisk | | | | |
| 9 | Motion Transmitting Mechanism | | 05/003,832  02-Apr-1991 | | |
| 10 | Motion Transmitting Mechanism | | | | Swedish Patent 459,441 |
| 11 | Motion Transmitting Mechanism | | | | European Patent 348,405  28-Jul-1993 |
| 12 | Power Control system for Energy Converter Operating according to Stirling, Ericsson or similar Thermodynamic Cycle | | | | Swedish Patent 467,837 |

9236331.5

## SCHEDULE

| Patent Title | Application No. | Filing Date |
|---|---|---|
| Method for Pretreating Water for Desalination | 09/941,175 | August 28, 2001 |
| Heat Exchange Element with Hydrophillic Evaporator Surface | 09/932,840 | August 17, 2001 |
| High Efficiency Steam Ejector for Desalination Applications | 09/932,841 | August 17, 2001 |
| Stirling Engine With Platelet Manifold | 10/012,782 | November 5, 2001 |
| Stirling Engine With Platelet heat Exchanging Elements. | 10/090,673 | March 4, 2002 |

**EXHIBIT "7"**

## BILL OF SALE

BILL OF SALE dated February 19, 2003, from Ocean Power Corporation, a Delaware corporation (hereinafter called "Seller"), to Power Play Energy, LLC, a Delaware limited liability company ("Power Play"), whose members include Algonquin Capital Management L.L.C., a Connecticut limited liability company and Hibernia Capital Management L.L.C., a Delaware limited liability company (hereinafter called "Purchasers").

Seller is a debtor-in-possession in a proceeding under Chapter 11 of Title 11 of the United States Code pending the United States Bankruptcy Court for the Southern District of New York ("Bankruptcy Court"), Case Number 02-15989 (CB) (the "Bankruptcy Proceeding"). Seller and Purchasers are parties to an Asset Purchase Agreement dated as of December 1, 2002 (the "Agreement"), as modified by a certain Creditor Settlement Term Sheet and Agreement (the "Settlement Agreement"). The Agreement and the Settlement Agreement were approved by an Order of the Bankruptcy Court dated February 6, 2003. All defined terms used herein but not defined herein shall have the meanings given to them in the Settlement Agreement.

Except as otherwise set forth in this paragraph, Seller, in consideration of the payment to it of the Purchase Price and other good and valuable consideration, hereby sells, conveys and assigns to Power Play all of its rights, title and interest to and under the Assets (as defined in the Agreement). Notwithstanding the preceding sentence and in accordance with the Settlement Agreement, the sale, conveyance and assignment of the Assets shall be subject to a condition subsequent that Purchasers (or Designee) reconvey to Seller (a) Class A Interests, consisting of 60% of the limited liability company interests in an entity to be formed by the Purchasers that will hold the Oases Assets; (b) the first $115,000 of net proceeds from the sale of Debtor's right, title and interest in and to the Elektryon Assets and 25% of all net proceeds received from such sale after the first $115,000; (c) the Malta Equipment; and (d) cash in the Debtor's estate in the amount of $35,000 (the "Cash Consideration"), all subject to and in accordance with the other terms and conditions of the Settlement Agreement. The Class A Interests shall be delivered to Halperin & Associates ("H&A"), Seller's bankruptcy counsel, on behalf of the Seller's estate in the Bankruptcy Proceeding, on or before February 25, 2003, unless extended, in writing, by agreement of the parties hereto. The proceeds of the Elektryon Assets shall be delivered to H&A, on behalf of the Seller's estate, promptly following their liquidation. Seller hereby acknowledges receipt of the Cash Consideration and the Malta Equipment. Nothing herein will affect any other obligations of the parties under the Agreement, the Settlement Agreement or otherwise.

IN WITNESS WHEREOF, Seller has executed this Bill of Sale as of the day and year first above written:

OCEAN POWER CORPORATION

WITNESS:

/s/ JR Henderson _____        By: /s/ J. Michael Hopper _____
                                    Name:     J. Michael Hopper
                                    Title:       Authorized Signatory

TERMS AND CONDITIONS
OF THE FOREGOING AGREED TO:

ALGONQUIN CAPITAL MANAGEMENT L.L.C.

By: /s/ Michael D. Lockwood _____
     Michael D. Lockwood

HIBERNIA CAPITAL MANAGEMENT L.L.C.

By: /s/ John V. Doyle _____
     John V. Doyle

POWER PLAY ENERGY, LLC

By ALGONQUIN CAPITAL MANAGEMENT, managing member

By: /s/ Michael D. Lockwood _____
     Michael D. Lockwood

**EXHIBIT "8"**





INVE

Home / Investors /

- PEOPLE
- STIRLING SOLAR POWER
- ABOUT
- TECHNOLOGY
- APPLICATIONS
- INVESTORS
- CONTACT US

## Investors

### EQUUS Total Return, Inc. of Houston, TX



EQUUS Total Return, Inc. is a business development company that trades as a closed-end fund on the New York Stock Exchange, under the symbol "EQS". EQUUS is managed by MCC Global NV, a Frankfurt stock exchange listed management and merchant banking group with significant experience in the alternative energy industry. Additional information may be obtained at www.equuscap.com



### Idealab of Pasadena, CA



Idealab's mission is to create and operate pioneering technology companies. Founded in 1996 by entrepreneur Bill Gross, Idealab provides a broad range of operational support to its companies, allowing the operating company management teams to focus on getting to market quickly and cost-effectively, and to take advantage of the serial start-up experience of the Idealab team. Bill Gross and Idealab have founded companies such as Energy Innovations, Overture Services, Inc., CitySearch, Picasa and InternetBrands. Current operating companies are providing innovative technology solutions in industries such as software, search, 3D printing and alternative energy fields. Additional information can be found at www.idealab.com



Home / Infinia Technology /

# Patents & Know How

Infinia is a world leader in developing Stirling related technology for use in power generation, combined heat and power, and cryogenic cooling. Infinia's development experience is resulting in products that make a significant difference today, and will improve the way we live tomorrow. We have patents in three major areas:



Free-piston generators

Cryogenic coolers

Vibration control and components



RELATED INFORM

» Patents

» How a Stirling E



**For a preview of these world changing technologies, click on the links below:**

**Free-Piston Generators**

US Patent 5,920,133 Flexure Bearing Support Assemblies with Particular Application to Stirling Engines

US Patent 5,743,091 Heater Head and Regenerator Assemblies for Thermal Regenerative Machines

US Patent 5,918,463 Burner Assembly for Heater Head of a Stirling Cycle Machine

US Patent 6,050,092 Stirling Cycle Generator Control System and Method for Regulating Displacement Amplitude of Moving Members

US Patent 6,930,414 Linear Electrodynamic System and Method

US Patent 6,931,848 Stirling Engine Having Platelet Heat Exchanging Elements

US Patent 6,952,921 Heater Head Assembly System and Method

US Patent 7,089,735 Channelized Stratified Regenerator System and Method

US Patent 7,134,279 Double Acting Thermodynamically Resonant Free-Piston Multi-Cylinder Stirling System and Method

US Patent 7,137,251 Channelized Stratified Regenerator with Integrated Heat Exchangers System and Method

## Cryogenic Coolers

US Patent 5,647,217 Stirling Cycle Cryogenic Cooler

US Patent 6,094,912 Apparatus and Method for Adaptively Controlling Moving Members within a Closed Cycle Thermal Regenerative Machine

## Vibration Control and Components

US Patent 5,522,214 Flexure Bearing Support with Particular Applications to Stirling Machines

US Patent 5,895,033 Passive Balance System for Machines

US Patent 5,642,618 Combination Gas Spring and Flexure Spring Construction for Free-Piston Machines

US Patent 5,315,190 & 5,654,596 Linear Electrodynamic Machine and Method of Using Same

US Patent 6,933,629 Active Balance System and Vibration Balanced Machine

US Patent 6,809,486 Active Vibration and Balance System for Closed Cycle Thermodynamic Machines

© 2007 INFINIA CORP. ALL RIGHTS RESERVED.

JOB OPPORTUNITIES

### Khosla Ventures of Menlo Park, CA

Khosla Ventures offers venture assistance, strategic advice and capital to entrepreneurs. The firm helps entrepreneurs extend the potential of their



ideas in both traditional venture areas like the Internet, computing, mobile, and silicon technology arenas but also supports breakthrough scientific work in clean technology areas such as bio-refineries for energy and bioplastics, solar, battery and other environmentally friendly technologies. Vinod Khosla was formerly a General Partner at Kleiner Perkins and founder of Sun Microsystems. Vinod has been labeled the #1 VC by Forbes and Fortune recently labeled him as one the nation's most influential ethanol advocates, noting "there are venture capitalists, and there's Vinod Khosla." Vinod Khosla founded the firm in 2004 and was joined by partners David Weiden and Samir Kaul, as well as chief scientific officer Doug Cameron in 2006. Khosla Ventures is based in Menlo Park, California. Additional information can be found at www.khoslaventures.com

### Power Play Energy, LLC of New Canaan, CT

Power Play Energy, LLC, is a private equity company based in Connecticut that owns alternative energy-related intellectual property and assets.



### Vulcan Capital of Seattle, WA

Vulcan Capital is the investment arm of Vulcan Inc., the project and investment management company founded by Paul G. Allen in 1986 to manage his personal and business initiatives. Vulcan Capital is focused on generating long-term value appreciation across a multibillion dollar portfolio, which spans diverse industry sectors and investment asset classes, ranging from early-stage venture investments to public equity value investing, leveraged buyouts, acquisitions and distressed situations. Additional

information can be found at capital.vulcan.com

© 2007 INFINIA CORP. ALL RIGHTS RESERVED.

JOB OPPORTUNITIES



**INFINIA CORPORATION SECURES $9.5 MILLION IN VENTURE FINANCING**

*--Investors include Khosla Ventures, Vulcan Capital, EQUUS,*
*Idealab and Power Play Energy--*

*--Deal includes acquisition of Stirling Cycles, Inc. from Idealab--*

**KENNEWICK, Wash – June 14, 2007 –** INFINIA Corporation, a leading developer of Stirling engine based products and technologies, today announced that the company has received $9.5 million in new venture funding.  Khosla Ventures of Menlo Park, CA, Vulcan Capital of Seattle, WA, EQUUS Total Return, Inc. of Houston, TX, and Idealab of Pasadena, CA joined existing investor Power Play Energy, LLC of New Canaan, CT in the financing round.  The deal also includes the acquisition of Stirling Cycles, a company developing Stirling engine technology, from Idealab for an undisclosed sum.

Operating without internal combustion, a Stirling engine utilizes a temperature differential to drive a piston and produce electricity.  Along with other Stirling based products, INFINIA is focused on commercializing a Stirling power system operating on concentrated solar energy for commercial and residential users. The Solar Stirling product is expected to be available in 2008.  The new funds will be used to further the company's sales and product development programs and for company operations.

"Our Stirling engines are unique – they are reliable, can be manufactured inexpensively, operate on many different heat sources and provide a platform for energy products that will change the way the world generates and utilizes energy," said J.D. Sitton, CEO of INFINIA. "We are very pleased to welcome each of these new partners – they are an impressive and accomplished group and we know their guidance and involvement will allow us to accelerate our product development programs and expand our customer reach."

In addition to the concentrated solar product, INFINIA and its partners are commercializing high efficiency combined heat and power products for the global appliance industry and are developing a unique, bio-gas fired Stirling generator to provide electricity and thermal energy for rural areas of developing countries.

"We have always believed in the tremendous potential of Stirling technologies for clean commercial and residential power generation and are excited to be backing the efforts of INFINIA," said Idealab CEO Bill Gross, who will join the INFINIA board of directors. "We were greatly impressed with the potential we saw in INFINIA and we look forward to working with them and the other investors to commercialize new Stirling-based products that we believe will have a huge impact on the energy markets."  Stirling Cycles, Inc. was founded by Idealab in 2005 to develop and

commercialize quiet, clean and portable Stirling engines. The company's efforts started as part of Idealab's solar concentrator company, Energy Innovations, and then grew to be an independent company focused on developing stand alone Stirling products from a distinctly commercial perspective.

Sharon Clayton, Vice Chairman of EQUUS, will also be joining the INFINIA board of directors. Ms. Clayton stated, "The Fund seeks to invest in small cap companies with significant growth potential. Our business development strategy contemplates opportunities in twenty-first century trend sectors, including alternative energy. INFINIA is a great fit and we look forward to working with this dynamic company and its strong management team."

### About INFINIA Corporation
INFINIA Corporation has been successfully developing and delivering innovative Stirling engines and generators since 1985. INFINIA's proven, reliable, proprietary free-piston Stirling engine technology is at the core of residential combined heat and power appliances being commercialized by Rinnai in Asia and Bosch and Enatec in Europe and is suitable for many long-life, zero-maintenance applications. INFINIA's mission is to improve the quality of life by changing how the world generates and uses energy.

### About Khosla Ventures
Khosla Ventures offers venture assistance, strategic advice and capital to entrepreneurs. The firm helps entrepreneurs extend the potential of their ideas in both traditional venture areas like the Internet, computing, mobile, and silicon technology arenas but also supports breakthrough scientific work in clean technology areas such as bio-refineries for energy and bioplastics, solar, battery and other environmentally friendly technologies. Vinod Khosla was formerly a General Partner at Kleiner Perkins and founder of Sun Microsystems. Vinod has been labeled the #1 VC by Forbes and Fortune recently labeled him as one the nation's most influential ethanol advocates, noting "there are venture capitalists, and there's Vinod Khosla." Vinod Khosla founded the firm in 2004 and was joined by partners David Weiden and Samir Kaul, as well as chief scientific officer Doug Cameron in 2006. Khosla Ventures is based in Menlo Park, California.

### About Vulcan Capital
Vulcan Capital is the investment arm of Vulcan Inc., the project and investment management company founded by Paul G. Allen in 1986 to manage his personal and business initiatives. Vulcan Capital is focused on generating long-term value appreciation across a multibillion dollar portfolio, which spans diverse industry sectors and investment asset classes, ranging from early-stage venture investments to public equity value investing, leveraged buyouts, acquisitions and distressed situations.

### About EQUUS
EQUUS Total Return, Inc. is a business development company that trades as a closed-end fund on the New York Stock Exchange, under the symbol "EQS". EQUUS is managed by MCC Global NV, a Frankfurt stock exchange listed management and merchant banking group with significant experience in the

alternative energy industry.  Additional information may be obtained at www.equuscap.com and www.mccglobal.com.

**About Idealab**
Idealab's mission is to create and operate pioneering technology companies. Founded in 1996 by entrepreneur Bill Gross, Idealab provides a broad range of operational support to its companies, allowing the operating company management teams to focus on getting to market quickly and cost-effectively, and to take advantage of the serial start-up experience of the Idealab team. Bill Gross and Idealab have founded companies such as Energy Innovations, Overture Services, Inc., CitySearch, Picasa and InternetBrands. Current operating companies are providing innovative technology solutions in industries such as software, search, 3D printing and alternative energy fields. Additional information can be found at www.idealab.com.

**About Power Play Energy, LLC**
Power Play Energy, LLC, is a private equity company based in Connecticut that owns alternative energy-related intellectual property and assets.

# # #

*This press release may contain certain forward-looking statements regarding future circumstances. These forward-looking statements are based upon the Company's current expectations and assumptions and are subject to various risks and uncertainties that could cause actual results to differ materially from those contemplated in such forward-looking statements including, in particular, the risks and uncertainties described in the Company's filings with the Securities and Exchange Commission. Actual results, events, and performance may differ. Readers are cautioned not to place undue reliance on these forward-looking statements, which speak only as to the date hereof. The Company undertakes no obligation to release publicly any revisions to these forward-looking statements that may be made to reflect events or circumstances after the date hereof or to reflect the occurrence of unanticipated events. The inclusion of any statement in this release does not constitute an admission by the Company or any other person that the events or circumstances described in such statements are material.*

**Contacts:**

| | |
|---|---|
| **INFINIA Corporation:** | Jim Clyde, 509.735.4700, info@infiniacorp.com |
| **Khosla Ventures:** | 415.392.8282 or kv@outcastpr.com |
| **Vulcan Capital:** | Michael Nank, 206.342.2000, michaelna@vulcan.com |
| **EQUUS:** | Brett Chiles, 713.529.0900, bchiles@equuscap.com |
| **Idealab:** | Teresa Bridwell, 626.535.2886, teresa@idealab.com |

**EXHIBIT "9"**



KUHNS BROTHERS

Since 1842

Board of Directors
Ocean Power Corporation

By Facsimile to (718) 499-4083
By E-mail to jpmaceda@powerco.com, homestar@earthlink.net, rlcampbell@powerco.net,
jmhopper@powerco.com, allenhalperin@halperinlaw.net

Gentlemen:

This letter represents a proposal by Kuhns Brothers, Inc. ("Kuhns Brothers") to provide
appropriate debtor-in-possession financing ("DIP Financing") of approximately $300,000 to
Ocean Power Corporation ("OP") in order for OP to file a plan of reorganization under Chapter
11 of the United States bankruptcy code. It is anticipated that the total financial package will
be in the $3 million range.

Kuhns Brothers is a financial services firm engaged in financing a variety of transactions in the
electric power industry. In particular, Kuhns Brothers is extremely familiar with the general
opportunity it recognizes at OP in the form of the distributed generation technology
represented by OP's home power unit ("HPU"). Furthermore, Kuhns Brothers has had
material experience in workouts and reorganizations. For more information concerning Kuhns
Brothers, please consult our website at www.kuhnsbrothers.com.

Kuhns Brothers respectfully requests a meeting and/or a conference call with the board of
directors of OP at their convenience, but generally as soon as possible, to discuss the provision
of the DIP Financing. Until such time as this meeting has occurred and OP's board has duly
considered our proposal, we respectfully request that OP not enter into any other transactions
that would deprive the shareholder's and general unsecured creditors of OP with what we
believe will represent a plan of reorganization in their best interests.

Sincerely,

John D. Kuhns
President

**EXHIBIT "10"**



November 22, 2002

Mike Lockwood
Ridgefield, Connecticut

By Facsimile [(203) 894-8484] and E-Mail Only

Dear Mr. Lockwood:

I am writing to you regarding Ocean Power Corporation.

William Weinstein, with whom we understand you are acquainted, recently contacted us about his interest in the Company and its technology, and inquired as to whether or not our firm would be interested in cooperating with him to organize an investment in Ocean Power and develop a business centering around the Company's home power unit ("HPU") using Ocean Power's Stirling engine/platelet technology.

After some due diligence, we have concluded that the Company's Stirling engine/platelet technology has potential. In particular, we would like to pursue the focused business plan advocated by Mr. Weinstein involving commercializing, manufacturing, selling and licensing the HPU.

From our conversations with Mr. Weinstein and others, we understand that you are a significant investor in and lender to Ocean Power, and that the Company has collateralized its obligations to you with the intellectual property involving the Stirling engine/platelet technology (the "IP"). We also understand that you are presently moving ahead with a proposal to the Company involving a specific type of bankruptcy filing under the US bankruptcy code, that you are expending significant sums of money in this procedure, and that if you are successful in your actions, you will own the IP and will then presumably have to spend considerable additional sums of money to do many of the same things that Mr. Weinstein and our firm contemplate.

Kuhns Brother's website is located at www.kuhnsbrothers.com. Our firm has a 25 year history in acting as both a founding principal and a venture capitalist with respect to businesses in the electric power industry, including many similar to Ocean Power. We have founded 4 companies in this field that have conducted initial public offerings of their common stock, with the most notable one—Catalyst Energy—being sold for approximately $1 billion approximately 8 years after its beginnings. We have made approximately 20 venture capital investments in power technology since 1981, and have

generated returns of approximately 60% on our capital. Over and above our own investment, we have also raised considerable sums of money for our portfolio companies from both financial institutions and high-net-worth individuals.

In these endeavors, we have developed considerable experience and expertise in every aspect of the very same tasks and functions you will soon be addressing if you move ahead yourself with Ocean Power and the IP.

With respect to Ocean Power, we believe that we can quickly arrange for enough money for the Company to reorganize in a way that will be beneficial and workable for everyone, including you as not only a secured lender but a shareholder.  Related to this reorganization, we also believe that we can raise enough money to adequately capitalize the Company during the development and commercialization of its technology, while at the same time paying off its creditors.  Finally, we believe our extensive networks in the electric power industry will allow us to recruit the management and the customers the Company will need to prosper.

We would like to meet with you as soon as possible to discuss the possibility of cooperating in the tasks relating to Ocean Power outlined above.  We wouldn't need a lot of your time, and believe you would find the meeting productive.

Please contact me if you have an interest in proceeding further.

Sincerely,

John D. Kuhns


cc. Will Weinstein