Michael L. Cirrito, Esq. (9053)
WHITE, CIRRITO & NALLY, LLP
Attorneys for Defendant MACEDA
58 Hilton Avenue
Hempstead, New York 11550
(516) 292-1818

UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
MICHAEL D. LOCKWOOD and
ALGONQUIN CAPITAL MANAGEMENT, LLC,
A Connecticut Limited Liability Company,

                   Plaintiff,

     -  against –

JOSEPH MACEDA,

                   Defendant.
-----------------------------------------------------------------X

Civil Action Number: 07-cv-7524 (HB)

**MEMORANDUM OF LAW IN SUPPORT OF JOSEPH MACEDA'S
CROSS-MOTION FOR SUMMARY JUDGMENT AND
IN OPPOSITION TO THE PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT**

Respectfully submitted,

WHITE, CIRRITO & NALLY, LLP

_____
MICHAEL L. CIRRITO, ESQ. (9053)
Attorneys for Defendant
58 Hilton Avenue
Hempstead, NY 11550
(516) 292-1818

## **TABLE OF CONTENTS**

|   | Page |
|---|---|
| PRELIMINARY STATEMENT………………………………………….. | 6 |
| STATEMENT OF FACTS……………………………………………… | 7 |
| ARGUMENT: | |
|    1. Plaintiff's Burden on Summary Judgment Motion……………... | 10 |
|    2. The Purported Guaranty Does Not Create a Personal Liability………………………………………………… | 11 |
|    3. The Guaranty By Its Terms Makes Ocean Power Corporation the Beneficiary……………………… | 12 |
|    4. Plaintiff, By voluntarily impairing the collateral secured by the Note, to the detriment of the guarantor, extinguished the guaranty…………………………………….. | 13 |
|    5. the "sale" of the collateralized assets of OPC was, as to Maceda, a violation of Article 9 UCC and Maceda is entitled to a credit against his purported guaranty in the amount of the fair market value of the assets of OPC transferred to the plaintiff………………………………………………….. | 17 |
| CONCLUSION……………………………………………………………. | 19 |

## **TABLE OF CASES**

                                                        **Page**

Benderson Development Co., Inc. v. Schwab Bros. Trucking, Inc.,
64 AD2d 447, 409 NYS2d 890 (4th Dep't, 1978)............................................. 15

Chase Manhattan Bank v. Natarelli,
93 Misc.2d 78, 401 NYS2d 404(1977)........................................................ 17

Citicorp Leasing, Inc. v. United American Funding,
2005 WL 1847300 (SDNY 2005)............................................................... 18

First American Bank of NY v. Wassel,
158 Misc.2d 906, 601 NYS2d 994 (1993)................................................... 17

France v. Beda,
83 AD2d 802, 442 NYS2d 3 (AD2d Dep't 1981)......................................... 11

Gallo v. Prudential Residential Services, Ltd. Partnership,
22 F.3rd 1219, 1223 (2nd Cir. 1994)............................................................ 10

Grant v. Naylor,
8 US (4 Cranch) 224 (1808), 2 L.Ed. 603................................................... 13

In Re Winer,
39 BR 504 (SDNY, 1984)........................................................................... 17

J.P. Duffy Co. v. Todebush,
157 AD2d 688, 142 NYS2d 790 (AD 1st Dep't 1913)................................ 13

Kensington House Co. v. Oram,
293 AD2d 304, 739 NYS2d 572 (1st Dep't 2002)....................................... 10

Key Bank of Long Island v. Burns,
162 AD2d 501, 556 NYS2d 829 (2d Dep't 1990)....................................... 10

Magi Communications, Inc. v. Jac-Luc Associates,
65 AD2d 727, 729, 410 NYS2d 297............................................................ 11

Matsushita Electrical Industrial Co. v. Zenith Radio Corp.,
475 US 574, 586, 106 S. Ct. 1348, 1355-56, 89 L.Ed.2d 538 (1986).......... 10

Port Distributing Corp. v. Pflaumer,
880 F.Supp. 204 (SDNY, 1995), *aff'd* 70 F.3rd 8 (2nd Cir., NY 1995)............ 15

Salzman Sign Co. v. Beck,
10 NY2d 63, 67, 217 NYS2d 55, 176 NE 2d 74......................................... 12

Soloman v. Waterbury Brass Goods Corp.,
6 F.2d 990 (C.A. 2 [1925])..................................................................  11

Stillman v. Twentieth Century-Fox,
3 NY2d 395, 404, 165 NYS2d 498, 144 NE2d 387....................................  11

## TABLE OF STATUTES

|  | Page |
|---|---|
| Article 9 UCC............................................................. | 6, 9, 10, 17, 19 |
| Article 9-105(1)(d) UCC............................................ | 17 |
| Article 9-312 UCC (5)(a)........................................... | 14 |
| Article 9-312 UCC (5)(b)........................................... | 14 |
| Article 9-504(3) UCC................................................ | 17 |
| Fed. R. Civ. P. 56(e)................................................. | 10 |
| General Obligations Law §5-701(2).......................... | 11 |
| Section 3-606 UCC................................................... | 6, 9, 13, 15 |

**PRELIMINARY STATEMENT**

This Memorandum of Law is submitted on behalf of the Defendant, JOSEPH MACEDA ("MACEDA"), in opposition to the Plaintiff's Motion for Summary Judgment and in support of Defendant MACEDA's Cross-Motion for Summary Judgment. This action involves a claim by the Plaintiff that MACEDA is liable in money damages to Plaintiff based upon a Guaranty purportedly made by MACEDA in his individual capacity, guarantying a Note made by Ocean Power Corporation ("OPC") to Plaintiff's assignor, Michael Lockwood ("Lockwood").

Despite Plaintiff's statement that the Guaranty is "unambiguous" in fact, the document is internally inconsistent, naming OPC as the beneficiary of the Guaranty <u>not</u> Lockwood and is executed by MACEDA in his corporate capacity as "President" of OPC.

Additionally, if the Court should determine that the Guaranty represents a personal obligation of MACEDA, the Plaintiff, by voluntarily engaging in the purchase of the assets of OPC in bankruptcy, impaired the collateral that secured the OPC Note, to the detriment of MACEDA thereby discharging the guarantor in accordance with 3-606 New York Uniform Commercial Code ("UCC").

Finally, if the Court were to find the Defendant MACEDA personally liable on this Guaranty, since MACEDA received no Notice of Sale of the collateralized security, the sale was improper and in violation of Article 9 UCC. The monies, therefore, credited by the Plaintiff against the Notes ($2,000,000.00) was not binding upon the Defendant and MACEDA is entitled to a full fair market value credit for the valuable patents and intellectual property acquired by the Plaintiff in the bankruptcy sale.

These issues will be discussed in this Memorandum *in seriatum*.

## **STATEMENT OF FACTS**

Defendant, JOSEPH MACEDA, was the former President of Ocean Power Corporation ("OPC" or "the company"), a Delaware corporation which was in the business of developing distributed seawater desalination and power systems including Stirling engine-based products and technologies. He started the company in 1997 with an initial loan to the company of over $650,000 in December of 1997, and, thereafter, with a loan of over $400,000 in December of 1998 (Exhibit 1).

In addition to this loan of capital to the company, MACEDA also transferred to OPC certain intellectual property that he had developed in the field of integrated fluid management technologies applicable to Stirling engines.

After being approached by Plaintiff's assignor, Michael Lockwood, an investor interested in investing in the developing energy field, Mr. Lockwood participated in a private placement with the purchase of both common stocks and warrants in OPC.

On or about March 2001, OPC needed additional capital in order to produce, market and sell its products and Lockwood offered to loan OPC $2.5M dollars on condition that the loan be secured by the assets of OPC. Lockwood's attorney prepared for execution a Promissory Note (Exhibit "2"), a Guaranty (Exhibit "3"), and a Security Agreement (Exhibit "4") which were presented to MACEDA for signature on March 5, 2001. The Guaranty, which is the subject of this action, was signed by MACEDA in his capacity as President of OPC and bears the legend of "President" at the signature line (Exhibit "3").

The Guaranty also stated that it was signed to induce the acceptance of the within Note by Ocean Power Corporation and not as an inducement for Lockwood's acceptance of the Note, (See, Exhibit "3"). The first paragraph of the Guaranty unconditionally

guaranteed the obligation not to Michael Lockwood, but to the "Ocean Power Corporation."

The Plaintiff has alleged that, on or about September 25, 2002, Lockwood assigned the Note and Guaranty to Algonquin Capital Management, LLC, and has proffered as proof of same Exhibit "4". That Assignment Agreement prepared and signed by the Plaintiff further confirmed that the Guaranty was signed by MACEDA on behalf of OPC, and not individually, and recites that it is assigning "the $2,500,000.00 Promissory Note and Guaranty dated March 5, 2002, <u>executed by Ocean Power Corporation</u> ("the company") in favor of Lockwood," (Emphasis added).

There is no acknowledgement in the Assignment Agreement that the Guaranty was assigning the Guaranty of MACEDA and, in fact, the Assignment specifically states the Guaranty was executed by OPC.

At the time the Guaranty was signed, Mr. MACEDA was owed over $490,000.00 from OPC and had not taken a full salary from OPC since 1999.

There came a time when OPC could no longer fulfill its obligations, and although they had a good and valuable product, could not produce nor market it in the environment that existed at the end of 2001. As a result, Lockwood met with the Board of Directors and offered a Chapter 7 bankruptcy of OPC as the only way to resolve this issue.

On December 1, 2002, MACEDA resigned his position as President and member of the Board of Directors and the Petition in Bankruptcy for OPC was filed on December 2, 2002.

Although Mr. MACEDA is listed as an unsecured creditor for his loan to the company and the salary due to him since 1999, the only address listed on the matrix of creditors for him was "Sidney Center, NY 13839" (Exhibit "1"). Therefore, after the Petition was filed, MACEDA did not receive any Notice of any sale of the assets of OPC.

At the sale of the assets of OPC, the Plaintiff was the only bidder and all of the

8

assets of the company were purchased for a $2M credit against Promissory Notes which named the company as obligee and Lockwood as obligor.

These assets consisted mostly of the valuable patents and patent applications for the technology developed by MACEDA and OPC for a highly efficient Stirling engine (Exhibit "6").

Although the assets were purchased for $2M, they have since been used by Power Play Energy, LLC, an affiliated company of the Plaintiff, to market and develop these patents and since the bankruptcy, the Plaintiff has partnered with another corporation, which has received $9.5M in new venture funding to develop this Stirling engine with the patents acquired by the Plaintiff in the bankruptcy sale.

With the $2M credit received on its purchase of OPC assets, the Plaintiff then took credits on Notes it was due from OPC before taking any credit on the Note that was purportedly guaranteed by MACEDA.  As a result of the taking of these credits in the order in which he did, the Plaintiff voluntarily, and intentionally, impaired the collateral secured by this Note by crediting other unguaranteed Notes in detriment to MACEDA and, thus, extinguished the Guaranty, pursuant to Section 3-606 UCC.

Additionally, since MACEDA was not provided any notice of the sale and was unable to participate in same, this lack of Notice is in violation of Article 9 UCC.  As a result of this lack of Notice, the $2M credited by the Plaintiff was not binding upon MACEDA and he is entitled to a full credit for the market value of the valuable intellectual property transferred to Plaintiff in the bankruptcy proceeding.

## ARGUMENT

### 1. PLAINTIFF'S BURDEN ON SUMMARY JUDGMENT MOTION

In determining whether Summary Judgment is appropriate, the Court must resolve all ambiguities and draw all reasonable inferences against the moving party. See, Matsushita Electrical Industrial Co. v. Zenith Radio Corp., 475 US 574, 586, 106 S. Ct. 1348, 1355-56, 89 L.Ed.2d 538 (1986).

Once the moving party meets its burden, the non-movant must come forward with "specific facts showing that there is a genuine issue of fact for trial," Fed. R. Civ. P. 56(e).

Only where no rational fact finder "could find in favor of the non-moving party because the evidence to support its case is so slight," should the Court grant Summary Judgment. See, Gallo v. Prudential Residential Services, Ltd. Partnership, 22 F.3rd 1219, 1223 (2nd Cir. 1994).

Under New York law, a creditor seeking to enforce a written guaranty satisfies its *prima facie* case by establishing (1) an absolute and unconditional guaranty by the Defendant to the Plaintiff or its assigns; (2) the underlying debt; and (3) the failure to receive payment on the underlying debt. See, Kensington House Co. v. Oram, 293 AD2d 304, 739 NYS2d 572 (1st Dep't 2002); and Key Bank of Long Island v. Burns, 162 AD2d 501, 556 NYS2d 829 (2d Dep't 1990).

Creditors seeking to enforce alleged obligations on instruments for the payment of money only must also comply with the New York UCC and transactions secured by a collateral security agreement must be in compliance with Article 9 UCC.

The Plaintiff has failed to meet its *prima facie* burden of proof as a result of the deficiencies contained in the Guaranty document.

It is Defendant's position that the infirmities contained in the purported Guaranty, in and of itself, warrant a Summary Judgment dismissal of this action.

## 2. THE PURPORTED GUARANTY DOES NOT CREATE A PERSONAL LIABILITY

A document which purports to be a personal guaranty cannot be modified by parole evidence or other extringent evidence. The Statute of Frauds requires that such agreements be in writing and "subscribed by the party to be charged herewith," (General Obligations Law §5-701[2]).

A guarantor cannot be held liable other than by the strict terms of the agreement. "A guaranty is strict *issimi juris*," See, Soloman v. Waterbury Brass Goods Corp., 6 F.2d 990 (C.A. 2 [1925]).

In the case at bar, the written guaranty upon which this action is predicated is signed by MACEDA as "President" and, thus, does not confer personal liability upon MACEDA in his individual capacity.

When confronted with this exact situation, The Appellate Division, First Department, has held that an issue of fact is created which cannot support a motion for Summary Judgment by an obligee.

As the court stated in France v. Beda, 83 AD2d 802, 442 NYS2d 3 (AD2d Dep't 1981):

> "The written guaranty upon which the motion was based was signed by the defendants, each of whom in the presence of plaintiff's representative appended to his (defendant's) signature a word or term indicative of a representative capacity.
>
> Assuming the words added reflect corporate office, it is difficult to believe that a creditor would accept a guaranty of a corporate debtor to pay the corporation's own debts to the creditor. However, on the record before us, that possibility exists.
>
> The purpose of a motion for summary judgment is not to resolve issues but to determine whether factual issues exist (*Stillman v. Twentieth Century-Fox*, 3 NY2d 395, 404, 165 NYS2d 498, 144 NE2d 387; *Magi Communications, Inc. v. Jac-*

11

*Luc Associates*, 65 AD2d 727, 729, 410 NYS2d 297). There are factual issues as to whether the defendants signed the guaranty in an individual or corporate capacity (*Salzman Sign Co. v. Beck*, 10 NY2d 63, 67, 217 NYS2d 55, 176 NE 2d 74).

As further evidence of the fact that the Guaranty did not confer personal liability upon MACEDA, the Plaintiff Lockwood executed an Assignment Agreement with Plaintiff Algonquin on September 25, 2002. That document, (Exhibit "5"), is executed by Lockwood, as assignor and as managing member of the assignee. When referring to the Note and Guaranty relevant to this action, the Assignment states: "(1) the $2,500,000 Promissory Note and Guaranty dated March 5, 2001 <u>executed by Ocean Power Corporation</u> (the Company). . .", (emphasis ours).

When this assignment document is considered together with the Guaranty, signed by "Joseph Maceda, President", any fact issue with respect to the Guaranty's imposition of personal liability upon MACEDA should be determined in the Defendant's favor.[1]

### 3. THE GUARANTY BY ITS TERMS MAKES OCEAN POWER CORPORATION THE BENEFICIARY

The subject Guaranty states on its face that it was made "to induce the acceptance of the within note by the Ocean Power Corporation", (See, Exhibit "3"). Further, the "obligation" is recited as a guaranty "to the Ocean Power Corporation, its successors and assigns and to every subsequent holder of the Note."

The Guaranty does not describe the "Note" nor does it reference Lockwood as a "holder" of the Note.

Although the Plaintiff has argued that this was an unintended error in the wording of the Guaranty, case law supports a strict reading of the document language in a suit at law to recover a money judgment on a guaranty. This rule of construction follows the

---

[1] As set forth in Maceda's Certification this document (the Guaranty) was prepared by the attorneys for the Plaintiff Lockwood and presented for signature. Likewise, it is the Plaintiff (or his agents) who prepared the assignment document for his signature.

12

axiomatic principal that a guaranty must be strictly construed, (see, Solomon, *supra*).

In the case of Grant v. Naylor, 8 US (4 Cranch) 224 (1808), 2 L.Ed 603, the court considered a guaranty that was made to the firm of John and Joseph Naylor instead of John and Jeremiah Naylor. In affirming the dismissal of plaintiff's action, Chief Justice Marshall stated:

> "That the letter was really designed for John and Jeremiah Naylor cannot be doubted, but the principles which require that a promise to pay the debt of another shall be in writing, and which will not permit a written contract to be explained by parol testimony, originated in a general and a wise policy, which this court cannot relax so far as to except from its operation cases within its principle."

See, also, J.P. Duffy Co. v. Todebush, 157 AD2d 688, 142 NYS2d 790 (AD 1st Dep't 1913).

The fact that the Guaranty states "and to every subsequent holder of the Note" should not be construed to give Plaintiffs any recourse as beneficiaries under this Guaranty. Having never conferred any rights to the original holder of the Note or to have even named Lockwood as the holder, the Guaranty cannot be torturously construed to permit a new un-named beneficiary to assume these non-existent rights by subsequent assignment.

### 4. PLAINTIFF, BY VOLUNTARILY IMPAIRING THE COLLATERAL SECURED BY THE NOTE, TO THE DETRIMENT OF THE GUARANTOR, EXTINGUISHED THE GUARANTY

Assuming, *arguendo*, that the Court finds that the Guaranty represents a valid personal obligation of MACEDA to the Plaintiff, then it is Defendant's position that the Guaranty was extinguished by the Plaintiff's actions in the bankruptcy and post-bankruptcy proceedings.

Section 3-606 UCC states:

> "(1) The holder discharges any party to the instrument to the

> extent that without such party's consent, the holder:
>
> (a) without express reservation of rights releases or agrees not to sue any person against whom the party has to the knowledge of the holder a right of recourse <u>or agrees to suspend the right to enforce against such person the instrument or collateral or otherwise discharges such person</u>, except that failure or delay in effecting any required presentment, protest or notice of dishonor with respect to any such person does not discharge any party as to whom presentment, protest or notice of dishonor is effective or unnecessary; or
>
> (b) <u>unjustifiably impairs any collateral for the instrument given</u> by or on behalf of the party or any person against whom he has a right of recourse", (emphasis added).

The Plaintiff in the bankruptcy proceeding was given a $2M credit against the Notes he held naming OPC as obligor. These Notes are set forth in Exhibit "1" at Page 9, and all post-date the Note of March 5, 2001. In addition, only the Note of March 5th was purportedly guaranteed by MACEDA.

The Plaintiff then used this credit, to credit the post March 5th Notes (whether secured or unsecured), and then extended this $2M credit, last to the March 5th Note, resulting in an extraordinary loss in the value of this collateralized security as it pertained to this Note and Guaranty; in effect, making the collateral securing this Note virtually worthless and converting this secured Note into an unsecured discharged debt, (See. Plaintiff's Exhibit "C").

This proceeding was not only unreasonable and unjustified, but also was in direct contravention of Article 9-312 UCC (5)(a) which requires that security interests be given "priority in time of filing or perfection" and creates a priority of secured interests over those with unperfected security (See, Article 9-312 UCC [5][b]).

The March 5th, 2001 collateralized Note was perfected as a first priority, secured interest against the assets of OPC well in advance of the other notes and obligations

14

purportedly satisfied by the Plaintiff all to the detriment of MACEDA.

As such, MACEDA is entitled to a discharge of his obligation under the Note to the extent of $2M or the fair market value of the assets, whichever is greater, (See, Point 5).

As the purported Guarantor of a collateralized Note that had first a priority position, MACEDA was entitled to rely upon the orderly discharge of his obligation by execution on the collateral by the obligee.

In Port Distributing Corp. v. Pflaumer, 880 F.Supp. 204 (SDNY, 1995), aff'd 70 F.3rd 8 (2nd Cir., NY 1995), the court, in considering a guarantor's discharge under similar circumstances stated:

> "It is a venerable principle in New York law that a creditor holding collateral security for an obligation that is guaranteed holds that collateral in trust for the guarantor, and must preserve it for the benefit of the guarantor. See, The Merchant's Bank of Syracuse v. Comstock, 55 NY 24 (1873). The reason for this rule is apparent-creditors may not shift unjustly the burden of a debt upon a guarantor.
>
> \* \* \*
>
> Where collateral securities are held by the creditor for the debt, he holds them in trust for the surety, who is entitled to their benefit, and to have them applied in extinguishment *pro tanto* of his liability."

The court in Port, in citing UCC Section 3-606, found that the plaintiff-creditor who, "without the consent of the guarantor, releases collateral secured by the underlying obligation discharges the guarantor from his or her obligations under the guarantee" (citing *Benderson Development Co., Inc. v. Schwab Bros. Trucking, Inc.*, 64 AD2d 447, 409 NYS2d 890 [4th Dep't, 1978]).

The court also succinctly stated the sound business policies for such rule as follows:

> "A guarantor may assume great risks, but he should be entitled to expect creditors to behave with at least a minimal degree of

15

>commercial reasonableness and care.  In particular, where an independent third party guarantees an obligation as an accommodation to the debtor, *it seems reasonable for that party to rely on the expectation that a businessman-creditor will act responsibly and make at least a reasonable effort to secure its collateral under the UCC thereby protecting the guarantor's subrogation interest.  The Code's approach properly recognizes the importance of avoiding waste and minimizing damages.*
>
>\*   \*   \*
>
>It is also clear that Port's actions resulted in more than a mere impairment of collateral.  Port released the collateral entirely, as evidence by the fact that the company stipulated to the treatment of its claims as unsecured in the bankruptcy action.  For thus reason, Pflaumer's obligation under the guaranty is discharged entirely, rather than his obligation being extinguished *pro tanto*.  In this case, the *pro tanto* reduction is in effect 100%. (Emphasis in original)."

That court also found that a discharge of the guarantor obligation was appropriate regardless of the use of the terms "unconditional" and "irrevocable" in the guaranty.

As in the Port case, the Plaintiff in this case had voluntarily and intentionally affected the collateral that secured this obligation without the Guarantor's express consent.  Plaintiff purposely applied the bankruptcy credit to all of the unsecured and unguaranteed obligations of OPC before applying any to this debt.  This application was made with the ultimate intention and purpose to leave an outstanding balance on this guaranteed Note that was, as a result of Plaintiff's actions, made unsecured and discharged in bankruptcy.

MACEDA, as the Note's purported Guarantor, was entitled to full credit for this collateralized security.  The Plaintiff's failure to provide him with same was a violation of the UCC and the business ethics and purposes promulgated thereunder.

For all of the foregoing reasons, the Defendant's obligation, if any under the Guaranty, should be discharged.

5. **THE "SALE" OF THE COLLATERALIZED ASSETS OF OPC WAS, AS TO MACEDA, A VIOLATION OF ARTICLE 9 UCC AND MACEDA IS ENTITLED TO A CREDIT AGAINST HIS PURPORTED GUARANTY IN THE AMOUNT OF THE FAIR MARKET VALUE OF <u>THE ASSETS OF OPC TRANSFERRED TO THE PLAINTIFF</u>**

Assuming, *arguendo*, that this Court finds that the Guaranty document confers personal liability upon MACEDA in favor of the Plaintiff as beneficiary, MACEDA, as Guarantor of the collateralized Note, is entitled to a credit for the fair market value of the assets transferred to Plaintiff, irrespective of Plaintiff's $2M credit established by the Bankruptcy Court.

The action against MACEDA on the Guaranty is, basically, one for a deficiency judgment that remained after the sale of OPC's assets in the bankruptcy proceeding. Under such circumstances, Notice of Sale must be provided to the guarantor of the collateralized note who is treated as a debtor for the purposes of Article 9 UCC, (<u>See</u>, <u>First American Bank of NY v. Wassel</u>, 158 Misc.2d 906, 601 NYS2d 994 [1993]).

UCC Article 9-504(3) requires that Notice of Sale be given to the debtor (and guarantor) of the sale of collateralized assets. Guarantors are treated as debtors for the purposes of Article 9 (<u>See</u>, <u>Chase Manhattan Bank v. Natarelli</u>, 93 Misc.2d 78, 401 NYS2d 404 [1977]; UCC Article 9-105[1][d]).

In the case of <u>In Re Winer</u>, 39 BR 504 (SDNY, 1984), the court found that failure to provide a guarantor notice of sale created a rebuttable presumption that the deficiency judgment against a guarantor be disallowed. The <u>Winer</u> court found that the creditor seeking this deficiency judgment had the burden to prove that due notice was given <u>and</u> that the sale was commercially reasonable. Lacking notice, the guarantor is entitled to a full credit for the fair market value of the collateral regardless of the sale proceeds.

As stated in the MACEDA Certification, the intellectual property and patents of OPC transferred to the Plaintiff had a value far in excess of the $2M credited to Plaintiff

17

by the Bankruptcy Court. In fact, documents presented evidenced an investor's willingness to finance an additional $3M in OPC prior to the bankruptcy petition, (See, Exhibits "9" and "10").

This offered reorganization, coupled with MACEDA's willingness to return all of his stock in OCA to the company, would have resulted in a Chapter 11 reorganization, which would have paid all of the company's creditors 100% of their debts over time.

The Kuhns Brothers pre-bankruptcy offer only highlights the "fire sale" nature of this Plaintiff's purchase of the assets of OPC for his $2M offer.

In addition, since this intellectual property has been acquired it has been used to garner $9.5M in investment for its development, (See, Exhibit "8").

Since MACEDA was not placed on notice of the sale, the Plaintiff now bears the burden to prove that the sale was for fair market value and was reasonable. (See, Citicorp Leasing, Inc. v. United American Funding, 2005 WL 1847300 [SDNY 2005]).

Although this branch of Defendant's argument does not affect liability under the Guaranty, the Defendant is entitled to discovery and a trial on this valuation issue.[2]

---

[2] It should be noted that the Plaintiff chose to make this Motion for Summary Judgment before any deposition testimony had been taken. Non-Party depositions of officers of Kuhns Brothers and Infinia Corporation will, upon information and belief, conclusively establish that the assets received by Plaintiff were worth far in excess of the amount sued on herein.

## CONCLUSION

The Plaintiff is not entitled to a grant of its Motion for Summary Judgment. The Guaranty upon which this action is based is riddled with terms that call into question its value as a personal obligation of MACEDA.

In fact, these infirmities, coupled with the Plaintiff's assignment of the Guaranty executed by OPC, conclusively establish the non-personal nature of this document.

The Plaintiff also acted in a manner to intentionally impair the collateral secured under this Note and the UCC requires a discharge of the Guarantor under such circumstances.

Finally, even if this Guaranty were to be found to be enforceable against MACEDA individually, he is entitled to a full credit for the fair market value of the assets transferred to the Plaintiff in violation of Article 9 UCC.

For all of the foregoing reasons, the Defendant respectfully requests that the Plaintiff's Motion for Summary Judgment be denied and that Defendant's Cross-Motion for Summary Judgment be granted, together with such other and further relief as to this Court deems just and proper.

Dated: February    , 2008

Respectfully submitted,

WHITE, CIRRITO & NALLY, LLP

By: _____
MICHAEL L. CIRRITO, ESQ. (9053)
Attorneys for Defendant MACEDA
58 Hilton Avenue
Hempstead, NY 11550
(516) 292-1818