Barry S. Pollack (BP 4039)
SULLIVAN & WORCESTER LLP
1290 Avenue of the Americas
New York, New York 10104
(212) 660-3000
Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MICHAEL D. LOCKWOOD and ALGONQUIN CAPITAL MANAGEMENT, LLC, a Connecticut Limited Liability Company,<br><br>          Plaintiffs,<br><br>          vs.<br><br>JOSEPH MACEDA,<br><br>          Defendant. | Case No. 07-cv-7524 (HB) |

**PLAINTIFFS' COMBINED OPPOSITION
TO CROSS-MOTION FOR SUMMARY JUDGMENT AND REPLY IN
SUPPORT OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**

# **TABLE OF CONTENTS**

**PAGE**

Table of Authorities ................................................................................................................. ii

Argument .................................................................................................................................2

I.   The Defendant Cannot Survive Summary Judgment Based on Unreasonable
     Interpretations of the Operative Instruments ...................................................................2

     A.   The defendant executed the guarantees in his personal capacity .......................2

     B.   Algonquin is the Present Holder of the Guarantees, as a Matter of Law ...........4

II.  The Defendant Cannot Base a Defense on Impaired Collateral or Article 9
     of the UCC Because He Gave the Guarantees on *Unsecured* Promissory Notes ..........6

     A.   There Was No Pertinent Collateral that Could be Impaired ...............................7

     B.   The Defendant Merely Speculates that Collateral was "Impaired" ...................7

     C.   The Defendant is Not a Guarantor of Collateralized Debt Entitled to
          the Benefits of UCC 9-504(3) and He Has Failed to Create a Triable
          Issue of Fact Suggesting His Entitlement to a Larger Credit .............................8

     D.   The Bankruptcy Court Determination is Entitled to Collateral Estoppel ..........9

III. Further Discovery is Not Warranted ..............................................................................10

Conclusion .............................................................................................................................11

# TABLE OF AUTHORITIES

## FEDERAL CASES

Contemporary Mission, Inc. v. United States Postal Service, 648 F.2d 97 (2d Cir. 1981) ........... 10

Export-Import Bank of the United States v. Agricola del Maritime BCS, S.A.,
    536 F. Supp. 2d 345 (S.D.N.Y. 2008) .................................................................. 5

First National Bank of Arizona v. Cities Service Co., 391 U.S. 253 (1968) ................ 10

Grant v. Naylor, 8 U.S. 224 (1808) .................................................................. 5

Gray v. Darien, 927 F.2d 69 (2d Cir. 1991) ........................................................ 10

Paddington Partners v. Bouchard, 34 F.3d 1132 (2d Cir. 1994) ............................... 10, 11

Port Distributing Corp. v. Pflaumer, 880 F. Supp. 204 (S.D.N.Y. 1995) ....................... 8

Republic National Bank of New York v. Sabet, 512 F. Supp. 416 (S.D.N.Y. 1980) ............ 5

Solomon v. Waterbury Brass Goods Corp., 6 F.2d 990 (2d Cir. 1925) ........................... 7

In re Winer, 39 B.R. 504 (Bankr. S.D.N.Y. 1984) ............................................... 8, 9

Waldron v. Cities Service Co., 361 F.2d 671 (2d Cir. 1966) ..................................... 10

## STATE CASES

Chris v. International Export & Import Corp., 219 N.Y.S.2d 314 (Sup. Ct. 1961) ............ 6

Elwood v. Deifendorf, 5 Barb. 398 (N.Y. Sup. Ct. 1848) ........................................ 6

First America Bank v. Builders Funding Corp., 200 A.D.2d 946 (3rd Dep't 1994) ............ 5

France v. Beda, 83 A.D.2d 802 (1st Dep't 1981) ................................................ 3

J.P. Duffy Co. v. Todebush, 157 A.D. 688 (1st Dep't 1913) .................................... 5

Scully v. Sun, 171 A.D.2d 408 (1st Dep't 1991) ............................................... 3, 4

## FEDERAL STATUTES

Under Fed. R. Civ. P. 56(g) ........................................................................ 4

Under Fed. R. Civ. P. 56(f) ................................................................... 10, 11

## STATE STATUTES

UCC 3-606 (1)(b)..................................................................................................................7

UCC 9-504(3) ......................................................................................................................8

## Introduction

Algonquin Capital Management, LLC, by its undersigned counsel, hereby submits this combined opposition to the cross-motion for summary judgment and reply in support of its motion for summary judgment in this collection action on certain guarantees, stating as follows:

## Background

Nothing in the Defendant's opposition and cross-motion makes this and a related action anything more than a simple collection effort on guarantees. Defendant Joseph Maceda raises scattershot defenses and positions that simply lack merit. He does not deny that the underlying promissory notes are valid. He does not deny that the promisor failed to make any payments. He does not deny that he signed guarantees on valid obligations.

The defendant's main theories consist of unreasonable interpretations of the guarantees. For example, he claims that his guarantees should be deemed guarantees in favor of the promisor, Ocean Power Corporation ("Ocean Power"), rather than in favor of the promisee, ignoring express language that the guarantees operate in favor of any assignee or subsequent holder of the underlying notes. Likewise, the defendant argues that the guarantees were made *on behalf of* Ocean Power for its own direct obligations, rather than personal guarantees of the corporate obligations. This interpretation is unreasonable because, among other things, it would make the guarantees superfluous corporate promises to abide by its own promises. Alternatively, the defendant belatedly claims that the Algonquin's willingness to give credits on the promissory notes for assets it obtained in bankruptcy proceedings should somehow be held against it. These and other positions asserted by the defendant lack merit and are insufficient to avoid summary judgment.

**Argument**

I. **The Defendant Cannot Survive Summary Judgment Based on Unreasonable Interpretations of the Operative Instruments.**

The defendant's arguments turn the law of negotiable instruments on its head. According to the defendant, his guarantee of certain promissory notes was only on behalf of the underlying corporate obligor, Ocean Power, and only in favor of that obligor. *See* Memorandum of Law in Support of Joseph Maceda's Cross-Motion for Summary Judgment and in Opposition to the Plaintiffs' Motion for Summary Judgment ("Def. Opp.") at 11-13. In other words, when the defendant signed the guarantees at issue, only his company guaranteed the company's obligations and only guaranteed those obligations to itself. Such a conclusion would not only require an unreasonable interpretation of the guarantees, but would make the guarantees a complete nullity.

A. **The defendant executed the guarantees in his personal capacity.**

Contrary to the defendant's argument, the operative instruments make clear that the corporate maker of the promissory notes differs from the personal guarantor. The first sentence of the body of each promissory note expressly identifies the promisor as "Ocean Power Corporation" and defines it as the "Obligor" on the notes. *See* Declaration of Michael Lockwood ("Lockwood Decl."), Exh. A; Certification of Joseph Maceda ("Maceda Cert."), Exhs. 2, 3. The first line of each guaranty expressly states that it is a "GUARANTY given by Joseph P. Maceda, the undersigned, to induce the acceptance of the within note (the "Note") by the Ocean Power Corporation." *Id.* The defendant ignores this clear contrast between the corporate obligor identified on the notes and the personal obligor identified on the guarantees.

In the face of this clear and unambiguous language in the bodies of the operative instruments, the defendant misplaces heavy reliance on the inclusion of the word "President"

2

after his name on a signature line. The defendant cites practically the entire (relatively unreasoned) opinion in *France v. Beda*, 83 A.D.2d 802 (1st Dep't 1981), in which the court refused to grant a pre-discovery summary judgment motion filed in lieu of a complaint. In *France*, there was no suggestion that the body of the guaranty indicated the personal capacity in which it was given, and the court emphasized evidence that the party giving the guaranty added a "word or term indicative of a representative capacity," rather than a personal capacity, while "in the presence of plaintiff's representative." *Id.* Here, the defendant has introduced no such evidence, other than the mere identification of him as the president of the corporate maker of the underlying note at the bottom of *a guaranty that indicated in its body that he was personally giving the guaranty to induce the acceptance of the corporate note*. The *France* decision hardly suggests that, under federal post-discovery summary judgment standards, the present defendant can avoid the plain language that appears in the body of unconditional guarantees.

A case much more similar to the present one resulted in the affirmance of a grant of summary judgment, in *Scully v. Sun*, 171 A.D.2d 408 (1st Dep't 1991). The defendant in *Scully* attempted to avoid personal liability because her signature appeared above her name followed by the title "President." The body of the instrument included her name without the title. The trial court held "that defendant had failed to raise a question of fact regarding her personal liability under the terms of the overdue note." The First Department affirmed, explaining:

> The court correctly found that defendant had failed to raise a
> question of fact regarding her personal liability, as she failed to
> submit proof showing a mutuality of intent necessary to constitute
> an agreement or understanding of fact that the notes were signed in
> a representative capacity only (*Rotuba Extruders, Inc. v. Ceppos,*
> 46 N.Y.2d 223, 413 N.Y.S.2d 141, 385 N.E.2d 1068). The note
> contained language stating that defendant Ellen Sun was to be
> individually liable and she did not meet her burden of showing

> "definite evidence establishing an agreement, understanding or course of dealing by virtue of which plaintiff would only hold the corporate defendant liable."

*Id.* While the defendant may now attest to his subjective hope that his guarantees would be construed as corporate obligations redundant of the underlying notes, he has offered no evidence of a "mutual intent" that they be so limited, as required by *Scully*.[1] The present defendant has also offered absolutely no evidence capable of overcoming the plain language that appears in the body of the guarantees identifying him personally as the party giving the guarantees.[2]

The only reasonable interpretation of the guarantees is that the defendant executed them in his personal capacity. As a matter of law, he cannot escape his choice to guarantee personally obligations of his former company.

### B.     Algonquin is the Present Holder of the Guarantees, as a Matter of Law.

In his opposition, the defendant does not contest that Algonquin is the present holder of the guarantees at issue through valid assignments. Instead, the defendant contests the ability of any entity, other than his former company, to enforce the guarantees. In support of this argument, the defendant selectively cites to a portion of the language in the guarantees that refers to the defendant giving them to Ocean Power. Without any supporting authority, the defendant asks this Court to ignore the remaining language in the guarantees referring to the rights of

---

[1] The defendant also cites misleadingly to an assignment of the promissory note, titled "Promissory Note and Guaranty." Def. Opp. at 12. A provision of the assignment refers to the "Promissory Note and Guaranty" as executed by Ocean Power. This was a correct statement because the pertinent promissory note was called a "Promissory Note and Guaranty," even though a separate "Guaranty" was executed by the defendant personally. In other words, the defendant attempts to misuse Ocean Power's execution of a *note* titled "Promissory Note and Guaranty" as proof that Ocean Power became a guarantor of its own obligation. In reality, the defendant personally executed separate, but accompanying, guarantees. *See* Lockwood Decl., Exh. A.

[2] In fact, although Maceda claimed that he believed he executed the guarantees in his corporate capacity and not in his personal capacity, *see* Maceda Cert., ¶¶ 10, 21, Maceda has previously admitted that he did personally guarantee the notes. *See* Certification of Michael Hopper ("Hopper Cert."), Exh. F. Thus, Maceda's Certification was submitted in bad faith, contrary to Fed. R. Civ. P. 56(g).

4

"assigns" and "any subsequent holder" of the guarantees because, according to the defendant, the holder amounts to "a new un-named beneficiary." Def. Opp. at 13.

Contrary to the defendant's "new un-named beneficiary" theory, the law of commercial paper routinely recognizes the right of assignment and the rights of holders, even though they may not be named in the original instrument. The language of the guarantees, taken in their proper context along with the underlying notes, makes clear that they were made to induce acceptance of the notes in favor of Algonquin's predecessors. *See* Lockwood Decl., Exh. A. Reliance by the defendant on *Grant v. Naylor*, 8 U.S. 224 (1808), is misplaced. In *Grant*, the guaranty did not contain references to "assigns" and "holders."[3] Rather, the guaranty mentioned only particular individuals, without the benefit of other language in the guarantees and contemporaneous promissory notes that confirmed a wider scope of potential beneficiaries. Unlike in *Grant*, in which the beneficiaries were fixed, without any potential ambiguity, *id.* at 235, here the guarantees expressly opened up a universe of assigns and subsequent holders whose roots can be found in the context of the overall transaction at the time of execution.

The defendant also misplaces reliance on *J.P. Duffy Co. v. Todebush*, 157 A.D. 688 (1st Dep't 1913). Even assuming the holding in *J.P. Duffy* is still good law in New York, the court explained that "[w]here the question is as to the meaning of the language of the contract there is no difference between the contract of the surety and that of anybody else." *Id.* at 690. "In the

---

[3] Contrary to the defendant's argument, the term "subsequent holder" is readily accepted in the law and usage of commercial paper. *E.g., Republic Nat'l Bank of New York v. Sabet*, 512 F. Supp. 416, 419 (S.D.N.Y. 1980), *aff'd*, 681 F.2d 802 (2d Cir. 1981) (reciting provision of guaranty that included the term "subsequent holder"). Likewise, assignments of guarantees are routinely upheld. *See First Am. Bank v. Builders Funding Corp.*, 200 A.D.2d 946 (3rd Dep't 1994) (affirming summary judgment, explaining that there was no evidence that plaintiff's "assignee" was not a proper holder of the guaranty); *Export-Import Bank of the United States v. Agricola del Mar BCS, S.A.*, 536 F. Supp. 2d 345, 349 (S.D.N.Y. 2008) (granting summary judgment on guaranty and explaining: "Under New York law, 'any claim or demand can be transferred,' N.Y. Gen. Oblig. § 13-101 Law (McKinney 2001), unless there is an express provision in the instruments prohibiting assignment.").

case of a surety, as in the case of anybody else, when it becomes necessary to construe the contract the usual rules are to be used, and it is to be interpreted like any other paper." *Id.*

Here, the guarantees can be construed by resort to the entire body of each of them, along with the accompanying notes. Under such circumstances, only one reasonable interpretation can arise, namely, that the defendant personally guaranteed to Algonquin (through its predecessors) the obligations of his company, Ocean Power, on certain contemporaneously executed promissory notes. Nothing in the guarantees limited the right of assignment or the universe of potential holders. Because the defendant has failed to raise a triable issue of fact as to any other possible reasonable interpretation of the notes and guarantees, summary judgment in favor of Algonquin is appropriate.

II. **The Defendant Cannot Base a Defense on Impaired Collateral or Article 9 of the UCC Because He Gave the Guarantees on *Unsecured* Promissory Notes.**

The remaining arguments by the defendant all depend upon an assumption that the guarantees were given in support of *then-secured* promissory notes. A careful review of the securitization agreement, on which the defendant relies, reveals that it was executed more than a year after the execution of the pertinent promissory notes and guarantees.[4] The defendant was not even a party to the securitization agreement, which covered subject matters beyond the promissory notes and guarantees at issue in this and the related case. *See* Maceda Cert., Exh. 4. Accordingly, the defendant has no interest in an alleged impairment of collateral that could have

---

[4] It is well established that taking of new security for an old debt, payable at a future date, does not discharge or limit the obligations of the surety. *See, e.g., Elwood v. Deifendorf*, 5 Barb. 398 (N.Y. Sup. Ct. 1848); *Chris v. Int'l Export & Import Corp.*, 219 N.Y.S.2d 314, 317-18 (Sup. Ct. 1961), *aff'd*, 282 N.Y.S.2d 662 (App. Div. 1967). Thus, Maceda cannot argue that the securitization agreement, executed more than a year after the notes and guarantees at issue, discharged his personal guarantees.

6

offered protection at the time of execution of the guarantees because *there was no collateral* underlying the promissory notes and guarantees at the time of their execution.

### A.    There Was No Pertinent Collateral that Could be Impaired.

A review of the plain language in the promissory notes and guarantees at issue reveal that they did not involve collateralized debt when the defendant executed the guarantees. A subsequent agreement that secured various debts of Ocean Power, as to which the defendant was neither a party nor an intended beneficiary, is irrelevant. The defendant has not claimed that he was a party to any securitization agreement, and he has not provided any evidence suggesting he was an intended beneficiary.[5] Indeed, the defendant's citation to UCC 3-606 reveals that the only pertinent collateral is collateral "for the instrument given." U.C.C. 3-606(1)(b). There was no collateral "for the [notes] given" in connection with the guarantees. The defendant has therefore failed to adduce evidence that his rights have been impaired in a manner that would overcome the plain and unconditional language of his guarantees.

### B.    The Defendant Merely Speculates that Collateral was "Impaired."

As indicated in its moving papers, Algonquin has provided a credit on the pertinent promissory notes and guarantees in the amount set forth in the Order of the bankruptcy court that conducted an auction of certain Ocean Power assets. Far from "impairment" of collateral, the transaction in bankruptcy court has helped the defendant avoid an additional $2 million in debt. The defendant has not claimed that the bankruptcy court procedures were deficient or commercially unreasonable. He also does not claim that he would have outbid or could have

---

[5] The defendant cites in his opposition to *Solomon v. Waterbury Brass Goods Corp.*, 6 F.2d 990 (2d Cir. 1925), but the *Solomon* court *enforced a guaranty* holding that "[t]here is no possible reason for contending that the guaranty was voided by changes made in the contracts within the period covered by the guaranty." *Id.* at 993.

afforded to outbid Algonquin for Ocean Power assets. To the extent the defendant claims that the Ocean Power assets were worth more, he simply speculates, without any foundation for the admissibility of any such opinion. In fact, the bankruptcy court expressly approved the sale of the Ocean Power assets and found the consideration paid for those assets "fair and reasonable." *See* Certification of Michael Hopper ("Hopper Cert."), Exh. D, at ¶ K. Under such circumstances, even if the alleged "impairment of collateral" were somehow relevant in this case, the defendant has failed to create a triable issue of fact that the exchange of $2 million, which benefitted the defendant's obligations in this case directly dollar-for-dollar, amounted to an "impairment."

    **C.    The Defendant is Not a Guarantor of Collateralized Debt Entitled to the Benefits of UCC 9-504(3) and He Has Failed to Create a Triable Issue of Fact Suggesting His Entitlement to a Larger Credit.**

The defendant argues that, under UCC 9-504(3), he is entitled to credit for the fair market value of the acquired Ocean Power assets, rather than the $2 million that the bankruptcy court determined. As discussed below, UCC 9-504 has no application here. In addition, the defendant has failed to provide any admissible evidence supporting a greater market value.

The guarantees at issue contain an express waiver of notice, protests, demands, etc. *See* Lockwood Decl., Exh. A. In addition, as previously described, the guarantees were not given for collateralized debt. Hence, UCC 9-504 has no application here. All of the cases to which the defendant has cited involved guarantees of obligations that were collateralized at the time of the execution of the guarantee. *See Port Distrib. Corp. v. Pflaumer*, 880 F. Supp. 204, 206 (S.D.N.Y. 1995), aff'd 70 F.3d 8 (2d Cir. 1995) ("Contemporaneously with the Purchase and Sale Agreement and the Notes, Port and Heileman executed a Security Agreement."); *In re Winer*, 39 B.R. 504, 506 (Bankr. S.D.N.Y. 1984) ("The individuals' guarantees were secured by

mortgages on the residences owned by the Winers and Romanos."). These cases have no application here because the defendant unconditionally agreed to guarantee Ocean Power's debt on the pertinent promissory notes without the benefit of any collateral at the time to support repayment.

At any rate, the entire process of the acquisition of Ocean Power assets was conducted in public bankruptcy proceedings. The defendant does not deny his awareness of the bankruptcy proceedings. In fact, it is undisputed that Maceda knew of the bankruptcy proceedings, *see* Hopper Cert., Exh. A, and had notice of the sale of Ocean Power assets to Algonquin. *See id.*, Exh. E. Maceda even negotiated the terms of and price for the sale. *Id.*, Exh. D.[6] He has offered absolutely no admissible evidence that would undercut the sufficiency of his participation in the bankruptcy proceedings. Tellingly, the defendant has offered no alternative value of the acquired Ocean Power assets, let alone admissible evidence to defeat a full grant of summary judgment.

### D. The Bankruptcy Court Determination is Entitled to Collateral Estoppel.

A bankruptcy court has already determined the reasonable value of the Ocean Power assets that have provided a credit for the benefit of the defendant. *See* Lockwood Decl., Exh. B. There is nothing in the present record to suggest that the issue was not fairly and fully litigated. The defendant has offered neither authority nor evidence for revisiting Algonquin's allocation of credit as approved by the bankruptcy court. The defendant offers nothing but speculation in his

---

[6] Significantly, Maceda claimed in his Certification that "notice" to him of the sale of Ocean Power assets was deficient because the bankruptcy court erroneously listed an incomplete address for him, as merely "Sidney Center NY 13839." *See* Maceda Cert., ¶¶ 15-16. In fact, the actual Affidavit of Service indicates that Maceda received notice of the sale of Ocean Power assets at his correct address. *See* Certification of Michael Hopper ("Hopper Cert."), Exh. E. At any rate, Maceda signed the Asset Purchase Agreement dated December 1, 2002, that fixed the $2 million price. *See* Hopper Cert, Exh. B. Maceda held a corporate management position at Ocean Power until February 20, 2003. *Id.* Exh. G.

efforts to reopen that determination in this case. And the defendant never sought to reopen in bankruptcy court the findings of that court. Accordingly, this Court should not permit the defendant to relitigate issues that have been resolved through the adversarial process in bankruptcy court.

### III.    Further Discovery is Not Warranted.

The defendant has neither specified the discovery he still seeks nor provided reasons for not having diligently obtained such discovery already. Further discovery is therefore not warranted.

"Rule 56(f) discovery is specifically designed to enable a plaintiff to fill material evidentiary gaps in its case --- it does not permit a plaintiff to engage in a 'fishing expedition.'" *Paddington Partners v. Bouchard*, 34 F.3d 1132, 1138 (2d Cir. 1994), *on remand*, 950 F. Supp. 87 (S.D.N.Y. 1996), *quoting Waldron v. Cities Serv. Co.*, 361 F.2d 671, 673 (2d Cir. 1966), *cert. granted*, 385 U.S. 1024 (1967), *and judgment aff'd sub nom.*, *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, *reh'g denied*, 393 U.S. 901 (1968). Accordingly, a party seeking discovery under Rule 56(f) must offer more than a "mere hope" of success in order to resist a motion for summary judgment. *See Gray v. Darien*, 927 F.2d 69, 74 (2d Cir. 1991) ("an 'opposing party's mere hope that further evidence may develop prior to trial is an insufficient basis upon which to justify the denial of [a summary judgment] motion'"), *cert. denied*, 502 U.S. 856 (1991), *quoting Contemporary Mission v. United States Postal Serv.*, 648 F.2d 97, 107 (2d Cir. 1981) (affirming decision by lower court staying all discovery and granting summary judgment motion).

> The *Paddington Partners* court has explained:
> Requests for discovery in the face of motions for summary judgment put forth by parties who were dilatory in pursuing discovery are disfavored, *Burlington,* 769 F.2d at 927, and

10

Econocom has offered very little in the way of support for its claim that its access to discovery was denied or diligently pursued. *Paddington Partners,* 34 F.3d at 1139.

Here the Defendant has not enumerated specific forms or topics of discovery, and has offered absolutely no reason for why those matters have not already been pursued. Under such circumstances, Rule 56(f) offers him no avenue for relief.

## Conclusion

The underlying notes have not been satisfied. As a result, the guarantees are enforceable against the defendant. Summary judgment is appropriate in favor of Algonquin. In the alternative, partial summary judgment should be granted on liability with a trial limited to damages issues.

Dated: June 3, 2008

Respectfully submitted,
MICHAEL D. LOCKWOOD AND
ALGONQUIN CAPITAL MANAGEMENT, LLC,

By their counsel,

/ s / Barry S. Pollack
Barry S. Pollack (BP4039)
Sullivan & Worcester LLP
1290 Avenue of the Americas
New York, New York 10104
(212) 660-3000