<u>Exhibit C</u>

Alan D. Halperin (AH-8432)
Robert D. Raicht (RR-2370)
Neal W. Cohen (NC-3573)
**HALPERIN & ASSOCIATES**
Counsel to the
Debtor and Debtor-in-Possession
1775 Broadway – Suite 515
New York, New York 10019
(212) 765-9100

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------x

In re:

**OCEAN POWER CORPORATION,**

        Debtor.

--------------------------------------------------------x

Chapter 11
Case No. 02-15989 (CB)

## MOTION FOR AN ORDER DIRECTING CONOCOPHILLIPS TO PRODUCE DOCUMENTS AND APPEAR FOR ORAL EXAMINATION PURSUANT TO RULE 2004 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE

TO THE HONORABLE CORNELIUS BLACKSHEAR,
UNITED STATES BANKRUPTCY JUDGE:

        Ocean Power Corporation, the debtor and debtor-in-possession herein (the

"Debtor"), by and through its counsel, Halperin & Associates ("H&A"), as and for its motion

(the "Motion") for an order pursuant to Rule 2004 of the Federal Rules of Bankruptcy

Procedure (the "Bankruptcy Rule") directing ConocoPhillips ("Conoco") to produce documents

and appear for oral examination under oath.  In support of the Motion, the Debtor respectfully

represents:

## INTRODUCTION

1.      On December 1, 2002 (the "Petition Date"), the Debtor filed a voluntary petition under Chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") and has continued in the management and operation of its business and property as a debtor-in-possession pursuant to §§1107 and 1108 of the Bankruptcy Code.

2.      On December 16, 2002, the United States Trustee appointed an Official Committee of Unsecured Creditors (the "Committee") in this case, which retained the law firm of Arent Fox Kintner Plotkin & Kahn, PLLC, as its counsel.

3.      The Debtor is a Delaware corporation, the common stock of which is publicly held and traded on the NASDAQ OTC Bulletin Board.

4.      The Debtor is the successor to a development stage company formed in 1992 to develop and manufacture modular seawater desalination and power plants.

5.      By Order dated February 6, 2003, this Court approved a sale of substantially all of the Debtor's assets to Power Play Energy LLC (the "Asset Sale"). As part of the consideration paid at the Asset Sale, the purchaser agreed to re-convey to the Debtor, for the benefit of its creditors, a 60% interest in a limited liability company (to be formed) to hold the water desalination and related assets, including intellectual property, to the Debtor's wholly owned subsidiary Oases International Services Corporation (the "Re-Conveyed Interests"). By order dated May 20, 2003, the estate was authorized to sell the Re-Conveyed Interests to Oases International, LTD ("OI") in return for OI's payment of a revenue stream to the estate over a period of years.[1]

---

[1] Pursuant to the transaction with OI, the estate will receive 5% of the first $10 million in base revenue (as defined in the OI sale agreement) and 2.5% of base revenue thereafter, in an amount not to exceed $3 million in the aggregate. The sale agreement provides for minimum payments to the estate, as follows: (a) $45,000 in year 1; (b) $60,000 in year 2; (c) $100,000 in year 3; and (d) $250,000 in each of years 4-7.

## JURISDICTION AND VENUE

6.    This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§157 and 1334 and the Standing Order of Referral of Cases to Bankruptcy Court Judges of the District Court for the Southern District of New York, dated July 10, 1984 (Ward, Acting C.J.).  The statutory predicates for the relief sought herein are Bankruptcy Rules 2004 and 9016. Consideration of the Motion is a core proceeding pursuant to 28 U.S.C. §157(b).  Venue is proper before this Court pursuant to 28 U.S.C. §1409.

## BACKGROUND

7.    Prior to the Petition Date, the Debtor had engaged in negotiations with Conoco pursuant to which the Debtor was to provide consulting services to Conoco in connection with certain alkaline fuel cell research.  Negotiations on behalf of the Debtor were conducted primarily through Joseph P. Maceda ("Maceda"), the Debtor's then president and member of the Debtor's board of directors.  Maceda resigned as president, effective as of the Petition Date, but remained a director of the Debtor until the conclusion of the Asset Sale (i.e., until on or about February 6, 2003).

8.    Will Weinstein ("Weinstein") also participated in the negotiations between the Debtor and Conoco.  In addition, upon information and belief, at certain times during the negotiations, it was contemplated that Weinstein would fund, in part, the payments to the Debtor under the proposed consulting agreement with Conoco.  Prior thereto, and in or about May 2002, Weinstein made a conditional offer to purchase certain Home Power units proposed to be produced by the Debtor.  As the conditions to the offer were never satisfied, the offer was not consummated.

9.    By mid-October 2002, the Debtor and Conoco had reached final agreement concerning the nature and scope of the consulting services to be performed by the

3

Debtor, which contemplated that the Debtor prepare: (a) a report on alkaline fuel cells, including

a review and assessment of the markets, technology, economics, design and manufacturing,

potential partnerships and intellectual property opportunities for such systems; (b) a development

plan for a matrix alkaline fuel cell system project evaluating the feasibility of producing and

demonstrating the matrix electrolyte alkaline fuel cell technology; and (c) a development plan for

an advanced alkaline fuel cell system project using a low-temperature, liquid-phase hydrogen

generator (collectively, the "Consulting Services").

        10.     In consideration of the Consulting Services, the parties agreed that the

Debtor would receive a $150,000 consulting fee payable (a) $75,000 upon the commencement of

the engagement and (b) $75,000 no later than December 31, 2002 (the "Consulting Fee").

        11.     Prior to the Petition Date, an agreement was prepared memorializing (a)

the Consulting Services to be provided by the Debtor and (b) the Consulting Fee to be paid by

Conoco to the Debtor.  A draft of the consulting agreement is annexed as Exhibit "B" hereto.

        12.     During the same period and over the weeks that followed, the Debtor was

exploring various alternatives to address its financial difficulties, including a filing for relief

under Chapter 11 of the Bankruptcy Code.  Deliberations among the Debtor's directors and

management - - and subsequently with its proposed bankruptcy counsel - - included discussions

as to how the consulting agreement with Conoco might be implemented as part of a bankruptcy

filing.  While the Debtor was prepared to provide the Consulting Services to Conoco, it

determined to hold in abeyance the formal execution of any agreement until the course of any

potential bankruptcy proceeding was determined.

        13.     Notwithstanding the determination of its board and management, the

Debtor subsequently became aware that Conoco and an entity known as Pangea LLC ("Pangea")

had entered into an agreement pursuant to which Pangea would provide the Consulting Services

to Conoco (the "Pangea/Conoco Agreement"). Upon information and belief, Pangea is a limited liability company owned or controlled, directly or indirectly, by Weinstein.

14.     Upon information and belief, the Pangea/Conoco Agreement was on the same terms and conditions as had been negotiated with the Debtor, including, without limitation, the same Consulting Services and Consulting Fee. In addition, the Debtor has also learned that Maceda and certain former employees of the Debtor provided services to, and received compensation from, Pangea in connection with the Pangea/Conoco Agreement while still serving as an officer and director of the Debtor.

15.     Upon learning of the existence of the Pangea/Conoco Agreement, the Debtor made repeated demands upon Maceda for information concerning the Pangea/Conoco Agreement, which included requests for (a) a fully executed copy of the Pangea/Conoco Agreement, (b) full, complete and accurate disclosure concerning the events surrounding the Pangea/Conoco Agreement, (c) the disbursements made under the Pangea/Conoco Agreement and/or (d) the beneficiaries of such disbursements.

16.     Unable to obtain such information on a voluntary basis, the Debtor moved to compel such disclosures through the discovery procedures under Bankruptcy Rule 2004. By Order dated January 10, 2003 (the "January 10 Order"), this Court authorized the Debtor to conduct examinations of Maceda, Weinstein and Pangea under Bankruptcy Rule 2004. Those examinations continue to date.

17.     In response to the January 10 Order, the parties produced certain documents on a joint basis. The documents produced, however, did not include, among other things, a fully executed copy of the Pangea/Conoco Agreement, a key document in the investigation. Moreover, the documents produced, consisting, generally, of correspondence, emails and drafts, fail to provide an accurate and consistent picture of the events surrounding the negotiation and execution of Pangea/Conoco Agreement. The Debtor requires full and complete

5

information regarding the agreement in order to determine whether its execution resulted in the loss of a corporate opportunity by the Debtor and/or other possible claims.

18.    For these reasons, the Debtor has determined to pursue the information it requires through alternative means. Conoco is the counter-party to the agreement in issue. It is also aware of the circumstances surrounding the execution of the Pangea/Conoco Agreement as well as possesses a number of the primary documents that the Debtor requested, but have not been produced, by the entities currently subject to examination. The Debtor believes that an examination of Conoco will enable it to determine if, and to the extent, there are claims and causes of action arising from the negotiation and execution of the Pangea/Conoco Agreement. For these reasons, an examination of Conoco is a necessary part of this investigation.

## RELIEF REQUESTED

19.    By this Motion, the Debtor seeks entry of the proposed order pursuant to Bankruptcy 2004 authorizing examination of Conoco by (a) Jim Seaba, Ph.D., Advanced Technology Director of Conoco; and (b) any other employees or other representatives of Conoco, with knowledge of the facts set forth herein (collectively, the "Conoco Parties"). Additionally, pursuant to Bankruptcy Rule 2004(c), the Debtor requests that this Court direct each of the Conoco Parties to produce and deliver to H&A, not later than five (5) days prior to their respective examinations, all of the documents in the possession, custody and control of each of them pertaining to the Pangea/Conoco Agreement and the other documents set forth on Exhibit "A" hereto.

20.    Bankruptcy Rule 2004(a) provides that "[o]n motion of any party in interest, the court may order the examination of any entity." See Bankruptcy Rule 2004(a). That Rule permits a bankruptcy court to order the examination of any person and the production of documentary evidence relating to the "acts, conduct, or property or to the liabilities and

financial condition of the debtor, or to any matter which may affect the administration of the debtor's estate . . . ." <u>See</u> Bankruptcy Rule 2004(b). Such relief may be sought *ex parte*. <u>In re Hickman</u>, 151 B.R. 125, 129 (Bankr.N.D.Ohio 1993).

21.    The scope of a Bankruptcy Rule 2004 examination is often described as "unfettered and broad." <u>In re GHR Energy Corp.</u>, 33 B.R. 451, 453-54 (Bankr.D.Mass. 1983). Bankruptcy Rule 2004 is a discovery device designed for the "purpose of discovering assets and unearthing frauds" and has been compared to "a fishing expedition" <u>Id.</u>; <u>In re Continental Forge Co.</u>, 73 B.R. 1005, 1007 (Bankr.W.D.Pa. 1987) (the general purpose of Bankruptcy Rule 2004 is to locate assets and make those assets available to creditors).

22.    The foregoing matters relate to the property of the estate and financial condition of the Debtor, as well as the efficient and orderly administration of the Debtor's estate, and thus, are squarely within the parameters of Bankruptcy Rule 2004. <u>In re Drexel Burnham Lambert Group, Inc.</u>, 112 B.R. 584 (Bankr.S.D.N.Y. 1991); <u>In re Isis Foods, Inc.</u>, 33 B.R. 45 (Bankr.W.D.MO. 1983) (establishing that the trustee is granted a virtually unfettered right to inquire into all transactions and occurrences that related to the debtor under Bankruptcy Rule 2004).

23.    Finally, since the Debtor has carefully tailored this request to minimize the burden on the Conoco Parties of compliance, it is likely that in some cases the examination and/or production of documents may lead to further information requests from the Conoco Parties. Accordingly, the Debtor requests that the proposed order authorizing examinations under Bankruptcy Rule 2004 include a provision restraining the Conoco Parties from destroying or discarding any documents relating in any way to the relating to the Pangea/Conoco Agreement or any of the documents set forth on Exhibit "A" hereto.

24.    For all of the foregoing reasons, the Debtor seeks entry of the proposed order authorizing examinations under Bankruptcy Rule 2004 in the form annexed as Exhibit "C" hereto.

## WAIVER OF MEMORANDUM OF LAW

25.    The Debtor requests that the Court waive the requirement set forth in Local Bankruptcy Rule 9013-1(b) that any application filed shall be accompanied by a memorandum of law.  No novel issue of law is raised by this Motion and the relevant legal authority is discussed herein.  Accordingly, the Debtor submits that a waiver of Local Bankruptcy Rule 9013-1(b) is appropriate.

## NO PREVIOUS REQUEST

26.    No previous application for the relief sought herein has been made by the Debtor to this or and other court.

WHEREFORE, the Debtor respectfully requests that the Court enter an Order, substantially in the form attached as Exhibit "C" hereto, granting the relief requested and such other and further relief as the Court deems just and proper.

Dated: New York, New York
       June 6, 2003

                         HALPERIN & ASSOCIATES
                         Counsel to
                         Ocean Power Corporation
                         Debtor and Debtor-in-Possession


                         By:    /s/ Robert D. Raicht
                                Alan D. Halperin (AH-8432)
                                Robert D. Raicht (RR-2370)
                                Neal W. Cohen (NC-3573)
                                1775 Broadway, Suite 515
                                New York, New York 10019
                                212-765-9100

8